Mary Janell GARNER and Charles Garner, Appellants (Plaintiffs),

v.

Gayle HICKMAN and Sundance State Bank, Appellees (Defendants).

SUNDANCE STATE BANK, Appellant (Defendant),

v.

Charles E. GARNER and Mary Janell Garner as assignees of Gayle Hickman, Appellees (Plaintiffs),

v.

Gayle HICKMAN d/b/a Tower Homes Center, (Defendant).

Nos. 85–27, 85–114.

Supreme Court of Wyoming.

Nov. 12, 1985.

Bernard Q. Phelan, Cheyenne, for Mary Janell Garner and Charles Garner, appellants in No. 85–27 and appellees in No. 85–114.

Rex O. Arney of Redle, Yonkee & Arney, Sheridan, for Sundance State Bank, appellant in No. 85–114, and appellee in No. 85–27.

Robert J. O'Neil, Gillette, for Gayle Hickman, appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

BROWN, Justice.

These appeals involve a breach of contract action for defective construction of a modular home. The appellants, Mary Janell Garner and her father, Charles Garner (hereinafter the Garners), brought a breach of contract action against appellee Gayle Hickman (hereinafter Hickman) in Case No. 85–27. The Garners also brought an action alleging fraud, bad faith and unfair dealing against appellee Sundance State Bank (hereinafter the bank). The cases were consolidated below and on appeal. Trial was had to the court resulting in a $6,621 judgment for the Garners in their breach of contract action against Hickman. The trial court granted summary judgment in favor of the bank in the Garners' case of fraud against the bank. The court, however, found that the bank was liable for contribution to Hickman equal to two-thirds of the judgment against Hickman. In Case No. 85–114, the bank appeals the court's ruling that it was liable to Hickman for contribution.

In Case No. 85–27, the Garners appeal the summary judgment granted in favor of the bank and raise the following issues:

"1. Was the defendant Bank entitled to Summary Judgment, as a matter of law, upon the issue as to whether or not it was liable to appellants, Garners, upon the issue of fraud.

"2. Was the defendant Bank entitled to Summary Judgment, as a matter of law, upon the issue of whether or not it was liable to appellants upon the issue of good faith."

In Case No. 85–114, the bank appeals that part of the district court's judgment finding the bank was liable for contribution to Hickman for the judgment rendered in favor of the Garners and against Hickman and states the issue thusly:

"Did the lower court err in awarding judgment for contribution in favor of Hickman and against Sundance State Bank?"

We will affirm the summary judgment granted in favor of the bank in Case No. 85–27, but reverse the court's finding of contribution by the bank to Hickman in Case No. 85–114.

The facts in these cases are complex. The Garners filed a complaint against Hickman alleging a breach of contract for negligent construction of a modular home. Hickman cross-claimed against the bank for contribution of any judgment rendered against him. Subsequently, the Garners filed a separate action against the bank, alleging fraudulent misrepresentation of Hickman's qualifications as the general contractor for the home, and breach of its duty of good faith and fair dealing. The two actions were consolidated and merged for trial.

The Garners and Hickman entered into an agreement whereby Hickman agreed to construct a modular home for the Garners. Hickman advised the Garners and helped them choose a plan for the modular home. Hickman, however, never told the Garners that he was the general contractor as well as the dealer, but the bank treated Hickman as if he were. This was evidenced in a number of ways. First, the construction debt notes were signed by both Hickman and Janell Garner. Second, the bank designated Hickman as the "builder" to the Federal Home Administration in support of the bank's application for an F.H.A. guarantee. Third, Hickman was described by the bank as "essentially" the general contractor. Fourth, the bank required Hickman to sign the required F.H.A. warranty. Apparently Hickman did not believe that he was the general contractor since he protested the bank's request that he execute the warranty. And finally, all funds from the bank were paid to Hickman who then paid the plumbers, carpenters, electricians and other needed contractors. Throughout this entire process the bank acted as if Hickman was the contractor and never said anything to the contrary. Subsequently, the Garners were damaged due to the negligent construction of the modular home.

The trial court granted the bank's motion for summary judgment as to the Garners' complaint of fraud and unfair dealing against the bank. Additionally, as noted above, the court ruled the bank liable for contribution to Hickman equal to two-thirds of the judgment entered in favor of the Garners. Hickman conditionally assigned his rights under the judgment for contribution to the Garners, so now the Garners are the real parties in interest.

I

We will address both of the Garners' issues together regarding the propriety of granting the bank summary judgment on the Garners' allegations of fraud and bad faith. Specifically, the Garners alleged that the bank fraudulently induced them to contract with Hickman to build a modular home. Additionally, the Garners alleged the bank was guilty of bad faith by failing to advise them that Hickman was not qualified to act as a general contractor and for failing to advise the Garners that the bank was not treating Hickman as a general contractor.

When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. *Randolph v. Gilpatrick Construction Company, Inc.*, Wyo., 702 P.2d 142 (1985); and *Lane Company v. Busch Development, Inc.*, Wyo., 662 P.2d 419 (1983). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. *Dudley v. East Ridge Development Company*, Wyo., 694 P.2d 113 (1985). Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse*, Wyo., 697 P.2d 1040 (1985). Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts. *Bancroft v. Jagusch*, Wyo., 611 P.2d 819 (1980).

 The elements in a cause of action of fraud are false representation made by the defendant which the plaintiff relies upon to his detriment. *Duffy v. Brown*, Wyo., 708 P.2d 433 (1985); and *Anderson v. Foothill Industrial Bank*, Wyo., 674 P.2d 232 (1984). The false representation must be one which induces action and is reasonably believed by the plaintiff to be true. *Johnson v. Soulis*, Wyo., 542 P.2d 867 (1975). Therefore, in order for the Garners to make a prima facie case of fraud, they must show the bank made a material representation which was false, with intent to induce action by the Garners to their detriment. *Schepps v. Howe*, Wyo., 665 P.2d 504 (1983).

We have also stated that in order to establish fraud, the alleged false representations must be made before execution of the contract upon which the action is based:

"* * * In connection with the requirement of reasonable reliance we have recognized that false representations in or-

der to constitute actionable fraud must occur prior to the execution of the contract which is sought to be avoided or for which damages are sought to be recovered. [Citations.]" *Schepps v. Howe*, supra, at 508.

The Schepps case involved an action by purchasers of real property against the sellers based upon fraudulent misrepresentation. The buyers complained that the house had not been built by qualified contractors and was incomplete, all contrary to the sellers' claims. However, the sellers did not make such representations until after the parties had already entered into their sales contract. This court affirmed the district court's finding that there could be no cause of action for fraudulent misrepresentation when the alleged misrepresentation occurred after the contract was executed.

 Similarly, the alleged fraudulent misrepresentation by the bank in this case did not occur, if at all, until after Janell Garner and Hickman had already agreed that Hickman would construct the modular home. In her deposition, Janell Garner testified she worked out the agreement with Hickman before Jim Viergets of the Sundance State Bank ever became involved:

"Q. When was your first contact with Mr. Hickman?

"A. I'm not sure I can really give you an exact date. I know we started discussing around November and December of '79.

 \* \* \* \* \* \*

"Q. Okay. How many conversations did you have with Mr. Hickman regarding a home in '79?

"A. I can't really give you an exact amount. I know we've talked on several occasions and on the phone regarding the building of a modular home.

 \* \* \* \* \* \*

"Q. And about when would you say you really came up with the plans that you wanted to purchase from Rushmore Homes?

"A. In January of 1980.

"Q. And this was before you had met with Jim Viergets?

"A. We met with him that same month at the end of the month.

\* \* \* \* \* \*

"Q. —but you'd made a decision who you were going to buy a home from, the kind of home you wanted?

"A. Yes.

\* \* \* \* \* \*

"Q. Other than the order form I guess the Rushmore order form, was there anything else in writing describing your arrangement with Gayle Hickman?

"A. No.

"Q. It was all verbal?

"A. Yes.

\* \* \* \* \* \*

"Q. Isn't it true that all of the arrangements, everything from purchasing of the home to the plumbers, electricians, all the finish people, the carpenters, all of that was arranged for between you and Mr. Hickman?

"A. Yes.

"Q. Mr. Viergets had nothing to do with the selection of the Rushmore home or any of the people who were going to complete it; did he?

"A. No."

There is no evidence which shows the Garners relied upon any alleged misrepresentations by the bank made *before* they agreed with Hickman to have the modular home constructed. The agreement was completed before the bank was contacted. Therefore, the bank's alleged fraud, if indeed there was any, is of no consequence to the agreement between the Garners and Hickman, and is therefore nonactionable.

■ The same is true regarding the Garners' claim that the bank breached its duty of good faith in failing to advise the Garners that Hickman was not qualified to act as a general contractor and by failing to advise the Garners that the bank was not treating Hickman as a general contractor.

"Good faith" is defined under § 34–21–120(a)(xix), W.S.1977, as "honesty in fact in the conduct or transaction concerned." We have previously addressed the issue of good faith in its relation to real estate contracts in *Stockton v. Sowerwine*, Wyo., 690 P.2d 1202 (1984); and *Wendling v. Cundall*, Wyo., 568 P.2d 888 (1977).

In the present case, there is simply no persuasive evidence which supports the Garners' claim that the bank did not exercise good faith in its dealings with the Garners and Hickman. Although the Garners claim the bank breached its duty of good faith by failing to inform them that Hickman was not acting as a general contractor, it appears the notion that Hickman was acting as a general contractor was solely that of the Garners. Janell Garner testified that neither Hickman nor Jim Viergets (of the bank) told her that Hickman would be acting as a general contractor.

"Q. In that meeting that the three of you had, Jim [Viergets], Gayle [Hickman] and yourself, that was in January of 1980?

"A. Yes.

"Q. At that time did Jim Viergets tell you that Gayle Hickman would be a general contractor?

"A. That term wasn't used, no.

"Q. He merely told you that you'd have to have people finish the construction; didn't he?

"A. Yes.

"Q. And it was Gayle Hickman that volunteered that he would help you.

"A. Yes.

"Q. Did Gayle Hickman ever tell you at any time during the construction or before it started that he would be a general contractor on this project?

"A. No."

The Garners further claim the bank breached its duty of good faith by failing to inform them that Hickman did not believe he was the general contractor. We can see no merit to the Garners' claim in this regard.

Viewing all the evidence in the same light as did the district court, we must also

conclude that there is no genuine issue of material fact and summary judgment was therefore proper.

"* * * The judgment sought [by a motion for summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *" Rule 56(c), Wyoming Rules of Civil Procedure.

## II

The only issue in the bank's appeal (Case No. 85–114) is whether the district court erred in holding the bank liable to Hickman by way of contribution. As noted earlier, the Garners obtained judgment against Hickman for $6,621. The district court ordered the bank liable for contribution to Hickman equal to two-thirds of the judgment.[1]

One authority has defined contribution thusly:

"The principle or doctrine of contribution is one of equality in bearing a common burden. Contribution has been defined as a payment made by each person, or by any of several persons, having a common interest or liability, of his share in the loss suffered or in the money necessarily paid by one of the parties in behalf of the others. The right of contribution has also been variously described as the right of one who has discharged a common liability or burden, to recover of another, also liable, the portion which he ought to pay or bear; as the right enjoyed by a person who is jointly liable with others and has paid more than his proper share in discharge of the joint liability to force them to reimburse him to the extent of their liability; and as an equity which arises when one of several parties liable on a common debt discharges the obligation for the benefit of all." 18 Am. Jur.2d Contribution § 1, pp. 7–8 (1985).

Contribution in this state is governed by statute:

"(a) Except as otherwise provided in W.S. 1–1–110 through 1–1–113, where two (2) or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered by all or any of them.

"(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is compelled to make contribution beyond his own pro rata share of the entire liability." Section 1–1–110, W.S. 1977.

As our statute indicates, contribution comes from those jointly or severally liable for the *same* injury to person or property arising out of a *common* liability.

"* * * [T]he general rule is that one who is compelled to pay or satisfy the whole or to bear more than his just share of a *common burden or obligation,* upon which *several persons are equally liable* or which they are bound to discharge, is entitled to contribution against the others to obtain from them payment of their respective shares. In other words, when any burden ought, from the relationship of the parties or in respect of property held by them, to be *equally borne,* contribution is due if one has been compelled to pay more than his share. * * *" (Emphasis added.) 18 Am. Jur.2d Contribution § 1, p. 8 (1985).

We have already concluded in Part I of this opinion that there is no plausible evidence to prove the Garners' claims of fraud and lack of good faith on the part of the bank and therefore the district court's granting summary judgment in favor of the bank on these issues was proper. We

1. It is noted that the district judge signed two separate findings of fact and conclusions of law.

This is unusual, especially since the two documents are not entirely consistent.

think it was inconsistent, and, therefore improper for the district court to first of all grant summary judgment in favor of the bank, and then turn around and hold the bank liable for contribution equal to two-thirds of the judgment. To be liable for contribution, a party must be a joint tortfeasor who acted in concert with one or more other joint tortfeasors, thereby creating a common liability to be shared by them. There must be a sense of commonality between the tortfeasors to make them jointly liable for the resultant injury or damage caused.

Such element is indeed lacking here. We have previously concluded, as did the district court, that there is no plausible evidence of the bank's alleged fraud and lack of good faith. However, even if we could substantiate such allegations, we would be hard-pressed to find a sense of commonality between the bank's alleged fraudulent misrepresentation and Hickman's negligent construction of the modular home.

Black's Law Dictionary pp. 752–753 (5th ed. 1979), contains the following definitions of "joint tort" and "joint tort-feasors":

*"Joint tort.* Where two or more persons owe to another the same duty and by their common neglect such other is injured, the tort is 'joint.' "

*"Joint tort-feasors.* Term refers to two or more persons jointly or severally liable in tort for the same injury to person or property. [Citation.] Those persons who have acted in concert in their tortious conduct and are, accordingly, jointly and severally liable. Those who act together in committing wrong, or whose acts if independent of each other, unite in causing single injury. * * * "

In *ABC Builders, Inc. v. Phillips,* Wyo., 632 P.2d 925 (1981), we held that intervening house owners could not be held liable for negligence or any resultant contribution to a builder who was negligent with the city and liable for damage to a house from a landslide. The intervening owners were granted summary judgment, but were nevertheless included on the verdict form. We stated:

" * * * A tortfeasor is a wrongdoer; one who commits or is guilty of a tort. Black's Law Dictionary, Fifth Edition, 1979. Generally speaking, and without attempting an all-inclusive definition, a tort has a meaning similar to wrong and is an unlawful act injurious to another, independent of contract. *Price v. State Highway Commission,* 62 Wyo. 385, 396, 167 P.2d 309, 312 (1946). Not being tortfeasors, the Kasters had no liability either jointly or severally to the appellees for injury to appellees' property and therefore had no liability to ABC for contribution, even though they may have unconsciously created a condition which may have contributed to appellees' loss. "Since the Kasters were not negligent as properly determined by the summary judgment, their names should never have been on the verdict form as actors in appellees' loss. No liability can be grounded on negligence if no duty exists on the part of an individual. *Maxted v. Pacific Car & Foundry Co.,* Wyo., 527 P.2d 832 (1974); *Guinand v. Atlantic Richfield Company,* 485 F.2d 414 (10th Cir.1973). Once it has been determined that a person has no liability in connection with the occurrence, no reason remains for that person's name to appear on the verdict form for a determination of a percentage of negligence." (Footnote omitted.) *Id.,* at 934.

■ Here, the district court granted summary judgment in favor of the bank on the Garners' claims of fraud and bad faith. It was error then to hold the bank liable for contribution to a judgment it was not liable for. The district court did not find that the bank and Hickman were joint tortfeasors and therefore there can be no liability for contribution by the bank to Hickman.

In sum, the summary judgment granted in favor of the bank on the Garners' claims of fraud and lack of good faith is affirmed. The district court's judgment finding the bank liable to Hickman by way of contribution for two-thirds of the judgment is reversed.

Affirmed in part, reversed in part, and remanded to the district court to enter judgment accordingly.