Elizabeth L. FIEDLER, Edwin G. Fiedler and Katherine Elizabeth Fiedler and Douglas Glenroy Fiedler, by and through their next friends Elizabeth L. Fiedler and Edwin G. Fiedler, Appellants (Plaintiffs),

v.

David J. STEGER, Appellee (Defendant).

No. 85–185.

Supreme Court of Wyoming.

Jan. 30, 1986.

Edwin G. Fiedler, Laramie, pro se, appeared in oral argument; Cary R. Alburn III, Laramie, filed a brief (but was permitted to withdraw as counsel prior to oral argument), for appellants.

David E. Westling, Casper, appeared in oral argument; Ann Rochelle of Vlastos & Brooks, P.C., Casper, filed a brief, for appellee.

Before THOMAS, C.J., BROWN, CARDINE and URBIGKIT, JJ., and GUTHRIE, J., Retired.

URBIGKIT, Justice.

Appellant Elizabeth Fiedler, seven and one-half months pregnant, who was in fact suffering from appendicitis, and without personal examination, was prescribed an antinausea medication over the telephone by appellee Dr. Steger. Her appendix eventually ruptured and was removed several weeks after she delivered her baby

prematurely. In the resulting medical malpractice action against Dr. Steger for misdiagnosis, a motion for summary judgment was sustained, and we will now affirm.

Mrs. Fiedler telephoned her doctor's office on September 7, 1982, to complain of nausea and other symptoms. Dr. Steger was the physician on call; his associate in a medical practice was Mrs. Fiedler's regular doctor. By telephone, and without personal contact, Dr. Steger prescribed phenergan, an antinausea drug, for injection at the Riverton Memorial Hospital emergency room. After the injection, Mrs. Fiedler apparently felt better; she was not examined by Dr. Steger, nor were other arrangements made for her to be seen by any doctor.

Early in the morning of September 9, 1982, emergency room personnel at the hospital contacted Dr. Steger by telephone, since Mrs. Fiedler had then returned to the emergency room with similar complaints of nausea and other symptoms. Again, Dr. Steger prescribed phenergan over the telephone, and did not conduct any personal examination. Later that day, her regular doctor, Dr. Kent Stockton,[1] examined her, determined that premature labor and delivery were imminent, and arranged transportation from Riverton, Wyoming, to the University of Utah Medical Center in Salt Lake City, Utah, where she delivered a premature baby. No diagnosis of appendicitis was made either by Dr. Stockton or the group of doctors participating in the delivery in Utah.

Mrs. Fiedler's pain continued after the delivery, when she returned to her home in Riverton. Later that month, exploratory surgery revealed that she had suffered a ruptured appendix which had consequently abscessed. Extensive treatment followed.

Mrs. Fiedler, her husband and their children filed this medical malpractice action against Dr. Steger, alleging misdiagnosis and failure to examine and properly treat. Steger filed a motion for summary judg-

ment with supporting affidavits, and, by motion, Fiedler arranged for her expert to testify orally at the summary-judgment hearing.

The issue of the case, simply stated, is the propriety of the entry of summary judgment.

Summary judgment is properly granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), W.R.C.P.; *Greaser v. Williams*, Wyo., 703 P.2d 327 (1985); *Rompf v. John Q. Hammons Hotels, Inc.*, Wyo., 685 P.2d 25 (1984); *Matter of Estate of Brosius*, Wyo., 683 P.2d 663 (1984).

A succinct and conclusive critique of the Wyoming summary-judgment law is afforded by the court in *Garner v. Hickman*, 709 P.2d 407 (1985):

"When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. *Randolph v. Gilpatrick Construction Company, Inc.*, Wyo., 702 P.2d 142 (1985); and *Lane Company v. Busch Development, Inc.*, Wyo., 662 P.2d 419 (1983). A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. *Dudley v. East Ridge Development Company*, Wyo., 694 P.2d 113 (1985). Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. *Samuel Mares Post No. 8, American Legion, Department of Wyoming v. Board of County Commissioners of the County of Converse*, Wyo., 697 P.2d 1040 (1985). Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts. *Bancroft*

---

1. Stockton was originally named as a defendant, but was then released from the litigation by stipulation.

*v. Jagusch,* Wyo., 611 P.2d 819 (1980)." 709 P.2d at 410.

See also *Harden v. Gregory Motors,* Wyo., 697 P.2d 283 (1985).

Fiedler argues that a material fact is at issue in this case by her claim that she told Dr. Steger over the telephone on September 7, 1982, that abdominal pain accompanied her nausea. As an evidentiary conflict, Steger's personal affidavit indicates that he did not recall the patient's complaint of lower abdominal pain. This affidavit conflict does create a factual dispute.

The finite question for this court is whether the conflict as to what the patient told the doctor is sufficient to create a material fact issue rendering an order granting summary judgment improper. We will review the evidentiary conflict in determining whether there is a material fact question so that Steger would meet his burden of showing "an absence of genuine issues of material fact." *Metzger v. Kalke,* 709 P.2d 414, 420 (1985); *Timmons v. Reed,* Wyo., 569 P.2d 112 (1977); *Wood v. Trenchard,* Wyo., 550 P.2d 490 (1976); *Seay v. Vialpando,* Wyo., 567 P.2d 285 (1977); *Shrum v. Zeltwanger,* Wyo., 559 P.2d 1384 (1977).

As this court has frequently stated, there are four essential elements in a medical-malpractice action. The plaintiff must prove (1) that there is a duty owed by the defendant to the plaintiff, (2) that the defendant failed to perform the duty, and (3) that failure to perform the duty proximately caused (4) damage to the plaintiff. *Vassos v. Roussalis,* Wyo., 625 P.2d 768 (1981). Proximate cause means that the accident or injury must be the natural and probable consequence of the act of negligence. *McClellan v. Tottenhoff,* Wyo., 666 P.2d 408 (1983). See *Harris v. Grizzle,* Wyo., 625 P.2d 747 (1981).

Medical evidence was presented by both litigants, and we consider the case in the context of the evidence as available to the trial court. No actual conflict is found in either the affidavits as filed in support of the motion or the oral testimony as afforded by the medical witness for the plaintiff.

The testimony directly established that any claimed violation of the duty of Steger to examine was not the proximate cause of the damages which Fiedler (as the plaintiff) subsequently sustained. It was specifically stated in the sworn testimony that the appendicitis could not have been diagnosed on either September 7 or September 9, 1982. Kent F. Argubright, M.D., in an affidavit for Dr. Steger, opined:

"Making a diagnosis of a ruptured appendix during a pregnancy is a very difficult diagnosis to make. Symptoms of a ruptured appendix are very similar to premature labor during a third trimester pregnancy. Twenty-five percent of the diagnoses of ruptured appendix are made post partum. From a review of the records, plaintiff was seen by seven doctors prior to her delivery and immediately post partum. At least four of those doctors performed physical examinations. None of those seven doctors diagnosed appendicitis."

More determinative of the issue before us, appellants' medical expert, Dr. Shine, orally testified at the summary-judgment hearing that the diagnosis of appendicitis could not have been made on September 7 or September 9, 1982, after earlier having refused to sign an affidavit which stated otherwise. Additionally, the experts for plaintiffs and defendant agreed that the appendix probably ruptured post partum.

Accepting Mrs. Fiedler's version of the telephone conversation as true, Dr. Steger's failure to examine her did not cause the injury she sustained, in view of the uncontroverted medical testimony that the condition could not have been diagnosed on September 7 or 9 even with personal examination. In this case, an essential element, the causal connection between the breach of a duty owed and the injury sustained, is missing.

Summary judgment goes to the merits of the case and affects the substantive rights of the litigants. *Siebert v. Fowler,* Wyo., 637 P.2d 255 (1981); *Prakash v. American University,* 234 U.S.App.D.C. 75, 727 F.2d

1174 (D.C.Cir.1984). Because it is a final judgment which denies parties the right to a trial before a jury of their peers, summary judgment must be applied with great care after a review of the record and the law. *Yuba Goldfields, Inc. v. United States*, 723 F.2d 884 (Fed.Cir.1983). We find that the trial court properly exercised that care in granting this motion for summary judgment.[2]

This court, as did the trial court, takes the record as presented for the summary-judgment hearing, and cannot recreate the facts which may have been or do not appear. The record presented no issue as to any material fact, and Dr. Steger, on that basis, was entitled to judgment as a matter of law.

Affirmed.

---

**2.** This decision should not be viewed in any way as an indication that this court determined the appropriate standard of care as involving the practice of a physician who is on call in pre-scribing medicine over the telephone to a pregnant patient. Dr. Shine spoke to that subject in his testimony.