**Robert C. LeFAIVRE,**
**Appellant (Plaintiff),**

v.

**ENVIRONMENTAL QUALITY COUNCIL OF the DEPARTMENT OF ENVIRONMENTAL QUALITY of the State of Wyoming, Appellee (Defendant).**

**No. 86–240.**

Supreme Court of Wyoming.

April 9, 1987.

---

**3.** An incorrect order is not necessarily a void   order.

Robert C. LeFaivre, pro se.

A.G. McClintock, Atty. Gen., and Steven R. Shanahan, Sr. Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

This appeal record, viewed by a naturalist or Indian historian, would provide a fascinating discussion about a place in central Sweetwater County in southern Wyoming of archaeological, historical and cultural interest, called the "Natural Corrals." Judicial review, however, presents a conflict to this court between the Wyoming Department of Environmental Quality (DEQ), which denied a mine application, and appellant Robert C. LeFaivre, who wants to "mine" the constituent natural rock formation and procure boulders for home building and decorative stone. Procedural, substantive and jurisdictional issues are found in appellate briefs and oral argument presented pro se.

LeFaivre attacks the denial decision of the state agency on procedure: (a) protestants were not competent to object, secure a hearing, or present evidence; and (b) inadequate notice of the hearing. Substantively, he challenged the decision and contended that (a) the mine site was not considered properly to be a rare or uncommon area containing definable historical, archaeological, wildlife, surface, geological, botanical, or scenic value; (b) his mine and reclamation plan was adequately supported; and (c) the authority of the Wyo-

ming Department of Environmental Quality was preempted by federal law, excluding jurisdiction over the site despite state law and its environmental quality processes and permitting requirements. Appellant also challenges the sufficiency of the evidence to support the administrative agency decision.

## FACTS

Under the business designation of Western Aggregates, appellant had a suspended permit (No. 503) to mine pumice claims on federal Bureau of Land Management (BLM) lands in Sweetwater County. On April 4, 1984, he filed a personal application to amend Permit 503 to include two noncontiguous sites, one for a mill location, and the second for a building stone claim site of 160 acres. It is this second aspect, involving stone removal from the Natural Corrals that is the subject of this appeal.

When public notice was given about the mining application for the Natural Corrals area, protests were made, and the contested hearing of May 15, 1986 followed. Protestants were Steven D. Creasman, and Charles M. Love. Both signed the protest letter which evidenced their relationship to the Western Wyoming Community College in Sweetwater County, although the protest was not made in the name of the College.

The hearing was conducted by John Crow, an experienced Wyoming trial attorney who, as a member of the Environmental Quality Council acted as hearing examiner. Requirements in hearing management were complicated, since not only did LeFaivre appear pro se, but also protestants and all witnesses appeared without the assistance or participation of examining counsel, except the one witness presented by the Department of Environmental Quality.

Applicant testified, as his only hearing evidence, in the form of an opening statement and closing argument, with some factual evidence given in the nature of a combination of advocate argument and witness testimony. This included a rather expressive critique of the proceedings:

"This so-called hearing is merely a politically-caused, state-sponsored rally for a lost cause."

The land, which is property of the United States, is under the jurisdiction of the BLM, and it was established that BLM approval for the mining permit at the Natural Corrals had not been given.

Love, as a protestant, testified within his expertise as a professional geologist and archaeologist. He had prepared site reports of the area. Creasman testified as an archaeologist, on work and research done in the area for the BLM in connection with the area's nomination and consideration as a national registered archaeological site. Also in support of permit denial, Richard Randall testified as a representative of the defendants of wildlife and a wildlife specialist. Jim June testified as a retired state game warden and game specialist of 33 years with personal knowledge of the area. Henry Chadey, a former native of Superior, a town located some five miles from the Natural Corrals, who was a county employee of Rock Springs with lifetime experience in the area, testified as a representative of the county's Historical Society and of Sweetwater County Museum. Additionally testifying were Harold Johnson, an outdoor recreational planner and coordinator in the area of critical environment for the Rock Springs BLM district, and Frank Prevedel, a state senator and area native raised in the town of Superior, and a frequent visitor to the area for both archaeological search and recreational activities for a period of 50 years.

Ice caves, Indian digs, artifacts, uniqueness of the area, wildlife resource, historical significance of the area, cultural advantage, and recreational opportunity, were among the generalizations specifically addressed in the testimony in opposition to the mine permit.

A DEQ employee, Mark Moxley, the only other witness, testified about the permitting process and the relationship between the BLM and the state mining claim procedure. In analysis, he described the reclamation plan and mining permit intent:

"First let me describe what the mine plan is. It is Mr. LeFaivre's intention to go out and simply remove boulders, small ones, or else break off pieces of larger ones, so he is not intending to make any excavation into the ground, he's not intending to build any roads; so from that standpoint, his actual effect on the ground surface is minimal compared to most mining operations.

"The reclamation plan would simply be to perhaps reseed small areas where he may have perhaps destroyed some vegetation, or if he removes a rock and there's wear spots under the rock he would reseed it; but so far as any large scale reclamation, there would be none."

Mr. LeFaivre addressed the Council in closing comment, summarizing his factual position:

"Mr. Crow, members of the Council, interested citizens. If special consideration is to be given protestants as concerns admission of covert evidence in support of cultural inventory attributed to need for cause in this open meeting type hearing whereas no agenda is prescribed, applicant requests that the state enter application as approved by LQD prior to this unusual and cumbersome politically motivated rally by special interests in order for evidence of fact to be subjected to perusal of the Council without bias in forefront of consideration as is due and necessary.

"The Council may review the remainder of the record as will be offered into evidence upon concurrence of the Land Quality Division by special conference so as to preserve private rights attached in view of ongoing litigation as is effected by cooperative agreement with the State of Wyoming Land Quality Division as agent of the state obligated to applicant herein.

"Proposed quarry mining activity is beyond reasonable doubt not in setting of irreparable harm, destruction or material impairment. Therefore, from the environmental point of state concern, the Council is respectfully requested to approve the mine plan as is indicated by Land Quality Division should be done.

There is no particular historical, archaeological, wildlife, surface geological, botanical or scenic value in position of determination of the Council prohibiting mine permit approval. BLM predictions herein are reviewed as within prejudice of ACED. Opponents to minerals development are without basis in law, rule, and/or regulation in pursuit of personal preference to archaeologic endeavors. The area is not designated by any agency of government so as to deny the mineral rights. As for example, the Council has not designated the area rare or uncommon."

Responding to this declamation, the Council in its findings and conclusions determined procedural sufficiency for the hearing and factually, in part:

"5. Mr. Charles M. Love, Professor, Anthropology and Geology, Western Wyoming College, and Mr. Steven D. Creasman, Director, Archaeological Services, Western Wyoming College, filed timely objections to a portion of the mine permit amendment application.

\*     \*     \*     \*     \*     \*

"8. Permit amendment application, TFN 1 1/338, covers two noncontiguous parcels of property. The first parcel is a building stone collection area located at the Natural Corrals. \* \* \*

"9. The United States of America owns the surface and mineral rights for the land identified as the Natural Corrals. The land is managed by the Department of Interior, Bureau of Land Management.

"10. The Applicant did not present any direct evidence at the hearing in support of his application, but he chose to rely on his application and documents submitted to the Department to support his application.

"11. Applicant's permit amendment application for the area around the Natural Corrals is to allow the mining of large blocks of rock for sale as building stone. The mining and reclamation plan summary indicates that no excavation, earthmoving or roadbuilding will be conducted

at the mine site. Surface rocks will be removed whole or cut and split onsite and then removed. Overland travel will be by four wheel drive with the possible use of horses and helicopters. Operations will be conducted to avoid streams, springs, marshy areas and drainages. Trees and large shrubs will be preserved. There may be a need to house employees on site using small travel trailers or skid mounted buildings. The mining and reclamation plan summary further states that if significant environmental concerns are identified during the inspection, then alternate sites and or methods will be developed by the operator.

"12. The Applicant's mining and reclamation plan summary does not identify any existing archaeological, cultural or recreational values at the proposed site located around the Natural Corrals. Accordingly, no proposals or statements are made on how such values will be reclaimed, or will be affected.

"13. The area of the Natural Corrals is a small portion of a much larger area known as Zirkel Mesa. The building stone material present in the Natural Corrals consists of large boulders which are the result of lava flow.

"14. Contrary to the assertions of the Applicant, evidence at the hearing demonstrated that the boulders in the Natural Corrals are of the same mineralogy and petrology as boulders in other sections of the Zirkel Mesa, and other areas of the mesa are more accessible.

"15. The Natural Corrals has unique archaeological values, including shallow sites of two or three different types of Indian pottery, beads, trade beads, leather fragments, soapstone, pipes, projectile points, stone tool fragments, various types of obsidian and bone tools, and the only occurrence of mammoth tusk known in southwestern Wyoming. Current data suggests the area has been intermittently occupied by prehistoric and historic populations for the last 11,000 years.

"16. The spring located immediately adjacent to the Natural Corrals has a good deal of geologic deposition. The stratigraphy within the spring or immediately adjacent to the spring could yield a valuable climatological, wildlife and human occupation sequence.

"17. Ice caves at the Natural Corrals contain extensive archaeological values that are unique and therefore cannot be reclaimed.

"18. Known archaeological sites at the Natural Corrals are very shallow and would be irreparably destroyed by mining disturbance.

"19. Removal of any stones or boulders around the Natural Corrals could precipitate an erosion process which would adversely affect the shallow archaeological resources.

"20. The natural placement of the boulders around the Natural Corrals is integral to the total environment; and removal of any of the boulders would affect the entire site.

"21. The area of the Natural Corrals has been used as a recreational area by the citizens of Sweetwater County for many years, and in particular has been extensively used by the Town of Superior. The use has been of such duration and nature that the use itself has caused the site to have historic importance to Wyoming.

"22. The Natural Corrals has a combination of available water, food and shelter not otherwise available in the desert terrain and, consequently, the area is habitat for abundant and varied wildlife.

"23. Access to the Natural Corrals is by a two-track dirt road, which is in poor condition, and has not been maintained as it has been closed to public vehicle use by the Bureau of Land Management.

"24. The Natural Corrals is currently being considered for nomination on the National Register of Historic Places. In June, 1982, the Natural Corrals was designated as an area of critical environmental concern by the United States Department of Interior, Bureau of Land Management.

"25. The management objectives of the Bureau of Land Management for the Natural Corrals, as stated in 'Natural Corrals Area of Critical Environmental

Concern Management Plan' (DEQ Exhibit # 4), include protection of this area from the degradation of its cultural, recreation, and geologic values.

"26. The botany of the Natural Corrals is unusual for the southwestern part of Wyoming. Disturbance by mining would cause perhaps irreversible changes to both the vegetative and water regimes of the area.

"27. The historic, archaeologic, recreation, and wildlife values which make the Natural Corrals area unique are irreplaceable, and if disturbed by the proposed mining activity, could not be reclaimed."

The petition for review, filed in the district court and directly certified to this court, challenged jurisdiction and the sufficiency of the evidence to sustain the facts contained in the 11–page decision document.[1] We have attempted to extrapolate the issues as stated and amplified by briefs and oral argument.

## PROCEDURAL ISSUE

Appellant seriously contended at the hearing, and now contends on appeal, that Professors Love and Creasman were disqualified by virtue of their employment status with the College to file the protest or to testify and present evidence. In its findings and conclusions, as well as decision during the hearing, the Council denied the numerous motions made, addressing the individuals' rights under Wyoming's DEQ statute to enter permit protest or appear as a witness, pursuant to § 35–11–406(k), W.S.1977, 1986 Cum.Supp., which provides:

"Any interested person[2] has the right to file written objections to the application * * *."

1. Rule 12.06, W.R.A.P.:
    "The petition for review shall include a *concise* statement showing jurisdiction and venue and the specific ground or grounds upon which petitioner contends he is entitled to relief." (Emphasis added.)

2. "Person" is defined by the Act in § 35–11–103(a)(vi), W.S.1977, 1986 Cum.Supp.:

See *MacDougall v. Board of Land Commissioners of Wyoming*, 48 Wyo. 493, 49 P.2d 663 (1935), where standing as a citizen and taxpayer was accepted without question for a government contract protest.

To be a witness, the test here is not competency to testify, but rather weight to be given, considering bias, prejudice, or antagonistic position as shown or contended. Each person who testified in support of the protest and against the application demonstrated personal knowledge and individual expertise with the subject matter, and the persuasiveness of the testimony is to be determined from its substance as given. *State v. Zespy*, Wyo., 723 P.2d 564 (1986); *Caterpillar Tractor Company v. Donahue*, Wyo., 674 P.2d 1276 (1983). As Wyoming residents and concerned citizens, they were certainly qualified to be witnesses within the statutory criteria. Cogent authority to the contrary has not been presented.

From our review of the record, we do not find the hearing notice to be insufficient. Furthermore, appellant's posture for procedural objection is severely constrained since he, as applicant, did appear, did not ask for a continuance, and actually presented no evidence except his own opinions. *Grams v. Environmental Quality Council of the State of Wyoming*, Wyo., 730 P.2d 784 (1986).

## JURISDICTION LACKING TO DENY

The second contention presented by the appellant is that the Wyoming Environmental Quality Council cannot disprove applications for small mining sites in areas of the state which are contended to be rare or uncommon, or which have particular historical, archaeological, wildlife, surface geological, botanical, or scenic value, where a separate earlier designation had not been

"'Person' means an individual, partnership, firm, association, joint venture, public or private corporation, trust, estate, commission, board, public or private institution, utility, cooperative, municipality or any other political subdivision of the state, or any interstate body or any other legal entity."

made. At least to the extent of this record, we reject the argument, and agree with the position of the State pursuant to § 35–11–406(m)(iv), W.S.1977, 1986 Cum.Supp., that prior special-area designation is not required before actual Council consideration of an individual permit application can be made which may result in denial premised on the site sensitive statutory criteria. Corollary to the designation issue is the reclamation issue whereby LeFaivre contends that the area is nonarchaeological, and consequently that what is sometimes euphemistically called "goat pasture" reclamation should suffice. This states a question whether the area is actually rare and unusual and of a nature to justify and require special reclamation attention, or merely an undistinguished area which requires open-field pit-mining reclamation.

■ The special nature of this mine site justifies our approval of the Council's decision that reclamation is impossible if the special nature of the area is destroyed by cutting up and hauling away the area special features, namely the rock formation. We concur with the Council's well-supported Conclusion of Law No. 6:

"The Applicant has presented no evidence to demonstrate that the Natural Corrals can be reclaimed to its archaeological, historic, wildlife, and recreational use."

In contending next that the authority of the Council is preempted by federal law, appellant postures his position on lack of jurisdiction of the Wyoming agency. The applicable federal regulation, 43 CFR 3809.-3–1 provides:

"(a) Nothing in this subpart shall be construed to effect a preemption of State laws and regulations relating to the conduct of operations or reclamation on Federal lands under the mining laws.

"(b) After the publication date of these regulations the Director, Bureau of Land Management, shall conduct a review of State laws and regulations in effect or due to come into effect, relating to un-

necessary or undue degradation of lands disturbed by exploration for, or mining of, minerals locatable under the mining laws.

"(c) The Director may consult with appropriate representatives of each State to formulate and enter into agreements to provide for a joint Federal-State program for administration and enforcement. The purpose of such agreements is to prevent unnecessary or undue degradation of the Federal lands from operations which are conducted under the mining laws, to prevent unnecessary administrative delay and to avoid duplication of administration and enforcement of laws. Such agreements may, whenever possible, provide for State administration and enforcement of such programs."

■ Pursuant to that regulation, and § 9–2–121, W.S.1977 (recodified as § 9–1–216, W.S.1977, 1982 Pamphlet), as well as § 35–11–102, W.S.1977 and § 35–11–109(a)(ii), W.S.1977, 1986 Cum.Supp., the BLM and the State of Wyoming entered into a cooperative agreement on September 30, 1981. Its terms clearly justify and mandate consideration of permit applications by the state agency as in this case.[3] Appellant's arguments otherwise lack cogent authority of statute or case law sufficient to sustain rejection of the state agency authority over small mine sites in this situation, and consequently we reject his contentions. *Skurdal v. State*, Wyo., 708 P.2d 1241 (1985).

## SUFFICIENCY OF THE EVIDENCE

■ Excluding preemption and procedure, the singular issue of this appeal requires a sufficiency-of-the-evidence analysis. In effect, appellant directed his personal efforts to the contention that his application alone was sufficient to rebut the facts elicited by protestants through six witnesses. He fails, and we now affirm and conclude that the factual finding of the administrative agency is supported by substantial evidence. *Grams v. Environmen-*

---

**3.** This decision is consistent with the current opinion of the United States Supreme Court in *California Coastal Commission v. Granite Rock* *Company,* — U.S. —, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987).

*tal Quality Council of the State of Wyoming,* supra; *Big Piney Oil & Gas Co. v. Oil and Gas Conservation Commission,* Wyo., 715 P.2d 557 (1986). We will not rewrite the facts elicited in the record as would be required for this court to determine that competent evidence is lacking to support the decision made. *Fiedler v. Steger,* Wyo., 713 P.2d 773 (1986).

> "This court * * * takes the record as presented * * * and cannot recreate the facts which may have been or do not appear." 713 P.2d at 776.

Finding competent supporting evidence, this reviewing court is not justified in substituting its analytical opinions on factual matters for the determinations made by the administrative agency. *Big Piney Oil & Gas Co. v. Oil & Gas Conservation Commission,* supra.

Affirmed.