**Ralph A. PARKER, Appellant (Plaintiff),**

**v.**

**James G. HALLER, M.D., the Union Pacific Employees Hospital Association, an Oregon corporation, and Union Pacific Railroad Employees Health Systems, a Utah corporation, and John Doe, Appellees (Defendants).**

**No. 87–169.**

Supreme Court of Wyoming.

March 8, 1988.

Rehearing Denied March 22, 1988.

Bernard E. Cole and Donald A. Cole, Cheyenne, for appellant (plaintiff).

William F. Downes and C. John Cotton of Brown & Drew, Casper, for appellee (defendant) James G. Haller, M.D.

Robert G. Pickering of Bailey, Pickering, Stock & Welch, Cheyenne, for appellees (defendants) Union Pacific Employees Hosp. Ass'n and Union Pacific R.R. Employees Health Systems.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from an order entered in a medical malpractice action granting appellees' motions for summary judgment. Although appellant sets forth several issues on appeal, the threshold question to be answered is whether there are genuine issues of material fact which would preclude the entry of summary judgment.

We affirm in part and reverse in part.

On April 30, 1984, plaintiff/appellant Ralph A. Parker, an employee of Union Pacific Railroad Company, went to the dispensary of defendant/appellee Union Pacific Railroad Employees Hospital Association (Hospital Association), which since has merged with defendant/appellee Union Pacific Railroad Employees Health Systems (Health Systems), seeking an examination of his wrist which he had injured while participating in an exhibition rugby game the previous day. A physician's assistant employed by Hospital Association, Ron Munroe (named in the complaint as defendant John Doe), conducted an examination of Mr. Parker's wrist, applied an ice pack to the wrist, and wrapped it with an ace bandage. He advised Mr. Parker to see a doctor if his condition did not improve and then noted in his records that Mr. Parker had a sprained left wrist.

During the following two days, the swelling in Mr. Parker's wrist decreased and the pain diminished. However, Mr. Parker did continue to experience pain in his wrist, and, on May 22, 1984, he saw defendant/appellee James G. Haller, M.D. Dr. Haller informed Mr. Parker that the bump which he had found on Mr. Parker's wrist was a ganglion caused by a rupture in the tendon walls, that very little could be done for the ganglion, and that it eventually would go away. Dr. Haller did not x-ray the wrist but did prescribe a wrist brace to reduce the pain by decreasing the motion of the wrist.

On July 27, 1984, during an appointment with Jean Halpern, M.D., concerning an unrelated matter, Mr. Parker asked the physician about the problem he continued to have with his wrist. Dr. Halpern examined the wrist and referred Mr. Parker to Thomas Gasser, M.D., an orthopedic surgeon.

On August 3, 1984, Dr. Gasser determined from viewing x-rays he had taken that Mr. Parker had fractured a small bone in his wrist. He advised Mr. Parker that he felt a problem might develop with the bone because, within the three-month period since the fracture of the wrist, a cyst formation had developed and there was a significant possibility that the bone would not heal properly. Mr. Parker was then fitted with a short arm cast to allow him to continue working.

Over the next several months, Mr. Parker's fractured wrist did not heal even though a bone growth stimulator and a long-arm cast were applied to his wrist. On February 12, 1985, Dr. Gasser grafted a piece of bone cut from Mr. Parker's hip into the area of the wrist fracture to obtain satisfactory healing. Mr. Parker continued to see Dr. Gasser at monthly intervals dur-

ing which times x-rays were taken and various casts and splints were applied. Eventually, the fracture healed, the wrist splints were removed, and Mr. Parker was placed in physical therapy. By November 20, 1985, Mr. Parker's pain had diminished to a point where he experienced it only at the extremes of extension or flexion.

On April 25, 1986, Mr. Parker commenced a civil action to be tried before a jury alleging in substance that both Mr. Munroe, the physician's assistant employed by Health Systems, and Dr. Haller, retained by Health Systems as a medical doctor, negligently discharged their duties in the care and treatment of Mr. Parker's wrist, which caused Mr. Parker to incur an unnecessary loss of wages and medical expenses. The complaint also imputed the alleged negligence of Mr. Munroe and Dr. Haller to the Hospital Association.

After the complaint was answered[1] and after a period of conducting discovery, Hospital Association, Health Systems, and Dr. Haller filed motions for summary judgment with supporting depositions and affidavits. Mr. Parker in turn filed depositions, affidavits, and documents in resistance to the motions. On April 20, 1987, the court heard oral arguments and on June 1, 1987, filed its order granting summary judgment to the defendants,[2] finding that there were no triable issues as to any material fact for the reasons stated in the court's decision letter which was incorporated into the order. On June 3, 1987, Mr. Parker noticed this appeal.

■ This Court has the inherent power and duty on appeal to address a jurisdictional defect, even though it was not called to our attention by any litigant. *Hayes v. State*, Wyo., 599 P.2d 569 (1979).

Rule 17(d), W.R.C.P., provides:

"*Suing person by fictitious name.*— When the plaintiff is ignorant of the name of a defendant, such defendant may be designated in any pleading or proceeding by any name and description, and when the true name is discovered the

pleading or proceeding may be amended accordingly; and the plaintiff in such case must state in his complaint that he could not discover the true name, and the summons must contain the words, 'real name unknown', and a copy thereof *must be served personally upon the defendant.*" (Emphasis added.)

The record clearly discloses that Mr. Munroe's name was not known when this action was commenced and that he was designated in the caption of the complaint as a defendant known as John Doe. The record also shows that he was not personally served with a copy of the summons as required by the above-quoted rule and that he did not appear in the action in any manner.

A judgment rendered without proper service when there is no appearance is a nullity and void. *Pease Brothers, Inc. v. American Pipe & Supply Co.*, Wyo., 522 P.2d 996 (1974). We hold that the portion of the court's order dated June 1, 1987, purporting to grant summary judgment to Mr. Munroe as a defendant by the name of John Doe is null and void.

■ The negligence of an employee may be imputed to his employer even though the court does not have jurisdiction over the employee. *Thurston Metals & Supply Company, Inc. v. Taylor*, 230 Va. 475, 339 S.E.2d 538 (1986); 53 Am.Jur.2d, Master and Servant § 453 (1970). It, therefore, is necessary for this Court to address the issue of the alleged negligence of Mr. Munroe as it relates to his employer.

■ In *Walters v. Michel*, Wyo., 745 P.2d 913, 915 (1987), quoting from *Fiedler v. Steger*, Wyo., 713 P.2d 773, 774 (1986), we repeated our well-known standards of review on appeal governing questions of summary judgment:

" 'A succinct and conclusive critique of the Wyoming summary-judgment law is afforded by the court in *Garner v. Hickman*, [Wyo.,] 709 P.2d 407, 410 (1985):

' "When reviewing a summary judgment on appeal, we review the judg-

---

1. Mr. Munroe did not answer the complaint, and default was not entered.

2. Mr. Munroe did not move for summary judgment.

ment in the same light as the district court, using the same information. A party moving for summary judgment has the burden of proving the nonexistence of a genuine issue of material fact. Material fact has been defined as one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts."' (Citations omitted.)"

We also have noted that summary judgments are not favored in negligence actions, *Randolph v. Gilpatrick Construction Company, Inc.*, Wyo., 702 P.2d 142 (1985), and that summary judgment must be viewed as a drastic remedy which deprives a litigant of the right to a trial and which ought to be utilized with caution and restraint. *Kobielusz v. Wilson*, Wyo., 701 P.2d 559 (1985). If there is a dispute over a material fact which leads to conflicting interpretations, if reasonable minds might differ and the fact is material for purposes of summary judgment, or if proof of that fact would effectively establish an essential element of the claim asserted or would refute an essential element of a defense, summary judgment is improper. *Wyoming Game and Fish Commission v. Mills Company*, Wyo., 701 P.2d 819 (1985).

In its decision letter, the trial court stated that:

"Although Dr. Haller may have misdiagnosed plaintiff's injury there is not sufficient evidence indicating that such diagnosis was below the standard of care or that it was the proximate cause of plaintiff's lengthy treatment."

In reaching that conclusion, the trial court relied upon the medical testimony of Dr. Gasser and Seymour Thickman, M.D., presented on behalf of Dr. Haller. Specifically, Dr. Gasser stated in his deposition that it was not below the standard of care to not take x-rays upon initially being presented with complaints similar to those

of Mr. Parker and that he has known other orthopedic surgeons who have waited to take x-rays until the patient comes in for follow-up visits within a week or two. Dr. Thickman stated in his affidavit that Dr. Haller's decision to not obtain x-rays of Mr. Parker's wrist "was consistent with the standard of care, especially given the diagnosis of a ganglion cyst," and that there is much evidence to indicate that navicular fractures which are treated within a six-month period of time will have no different outcome than those diagnosed and treated immediately.

Mr. Parker specifically alleged in his complaint that, if Dr. Haller had used proper methods of examination, he would have timely discovered the fractured navicular bone in Mr. Parker's wrist and that this failure impeded and prolonged recovery due to the development of a chronic non-union of the fracture before Mr. Parker's injury was properly assessed and treated. In resistance to the testimony of Drs. Gasser and Thickman, the affidavit of Timothy E. Hoke, M.D., was presented which stated that x-rays should have been taken by Dr. Haller and that navicular fractures

"if diagnosed soon after the injury and treated with immobilization will stand a much better chance of appropriate healing. [Thus] the failure to diagnose the navicular fracture by Dr. Haller delayed, prolonged and impeded the patient's recovery course."

Additionally, Mr. Parker stated in his deposition that he could not recall Dr. Haller telling him to come back and that he was under the impression that all that could be done to aid in the healing and recovery of his wrist was to wear the wrist brace Dr. Haller had prescribed. This testimony sufficiently presents a dispute of a material fact as to whether or not Dr. Haller departed from recognized standards of medical practice.

The record on appeal also reveals that there is a dispute as to whether or not the delay in treating the navicular fracture was the proximate cause of the lengthy treatment requiring bone graft surgery. Although Dr. Thickman is of the opinion that

the delay did not cause the non-union of the navicular fracture, Drs. Hoke and Gasser are of a different opinion. Dr. Hoke stated in his affidavit:

"The failure to diagnose the navicular fracture by Dr. Haller delayed, prolonged, and impeded the patient's recovery course."

Dr. Gasser entered in his medical notes:

"I explained to the patient that with three months['] duration and cystic formation already, healing is relatively unlikely. That is I think there is a significant possibility that this will not heal well."

■ The trial court also stated in its decision letter in reference to the alleged negligence of the physician's assistant, Mr. Munroe, that:

"Plaintiff has failed to show any specific facts refuting the nonexistence of a genuine issue as to the alleged improper examination and advice given by Health Systems' employee, Ron M[u]nroe. Specifically, plaintiff has not shown that the physician's assistant had the qualifications and/or authority to do [any more] than he did, which was to tell plaintiff to see a doctor. Nor has plaintiff presented sufficient evidence showing that there is a genuine issue as to whether the physician's assistant breached his duty of care by not ordering x-rays and that the breach was the proximate cause of plaintiff's injury. To the contrary, plaintiff has admitted that the Health Systems' care was competent, excluding any care given by Dr. Haller."

In support of Hospital Association's and Health Systems' contention that they met their burden of providing evidence showing that Mr. Munroe's treatment met the standard of care required of physicians' assistants, they stated in their brief:

"Dr. Gasser, who later cared for Parker, testified that Physician Assistant Munroe's care met the standard of care for Board Certified Orthopedic [S]urgeons. Dr. Thickman stated that Munroe's treatment met the standard of care for a Board Certified Internist."

Although we were unable to find these statements in the record, we did find the following statement by Dr. Gasser in answer to a hypothetical question regarding the standard of care for a physician's assistant under circumstances similar to this case:

"I don't employ physician's assistants, and I don't know that I can truly testify as to what the standard of care is for them, but I believe that would be reasonable care."

We also were able to find the following allegation contained in Dr. Hoke's affidavit offered in resistance to the health care providers' motion for summary judgment:

"The standard of care afforded Mr. Parker was below the standard of care both from the physician's assistant and from Dr. Haller."

There clearly is a dispute as to whether or not Mr. Munroe's examination and treatment met the standard of care of a physician's assistant; i.e., whether or not Mr. Munroe was negligent.

■ Additionally, there remains a question of fact as to whether or not the negligence of Mr. Munroe, if proven, was a contributing cause of the lengthy medical treatment. We are unable to find anything in the record supporting the health care providers' motion for summary judgment which indicates that there was not a causal connection between the alleged negligence and the prolonged treatment of Mr. Parker. The party opposing a summary judgment has no obligation to support pleadings with affidavits or other evidence until the moving party establishes that there is no genuine issue of material fact. *Matthews v. Wyoming Department of Agriculture*, Wyo., 719 P.2d 216 (1986); *Ogle v. Caterpillar Tractor Co.*, Wyo., 716 P.2d 334 (1986).

Through their briefs and at oral argument, Dr. Haller, Hospital Association, and Health Systems ask this Court to adopt the following standards enunciated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), to determine whether or not summary judgment should be granted:

"[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* 106 S.Ct. at 2512.

"If the [resisting party's] evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 2511 (citations omitted). We decline the invitation to weigh evidence submitted in support of and in opposition to a motion for summary judgment and continue to follow our standard of review that summary judgment is improper if there is a dispute as to a material fact. *Wyoming Game and Fish Commission v. Mills Company,* supra.

■ An examination of the record in this case reveals that there are material questions of fact as to whether or not Mr. Munroe and Dr. Haller negligently examined, diagnosed, and treated Mr. Parker for his injured wrist and whether or not such alleged negligence was the cause of his protracted recovery and that such disputed questions of fact preclude the granting of summary judgment against Mr. Parker in that regard.

Finally, we recognize that the affidavit supporting Hospital Association's and Health Systems' motion for summary judgment stated that Dr. Haller was an independent contracting physician with Health Systems and its corporate predecessor, Hospital Association. We agree with the trial court that there is nothing in the record to dispute this and, as a matter of law, any alleged negligence by Dr. Haller cannot be imputed to these health care providers. Mr. Parker cannot rely only on the allegations in his complaint that Dr. Haller was employed by Hospital Association to impute the alleged negligence of Dr. Haller. Rule 56(e), W.R.C.P., clearly provides that, when a motion for summary judgment is made and supported, an adverse party cannot rely upon the mere allegations or demands of his pleadings. *Greenwood v. Wierdsma,* Wyo., 741 P.2d 1079 (1987). As a matter of law, neither Health Systems nor its predecessor, Hospital Association, is vicariously liable for the alleged negligent acts of Dr. Haller, an independent contractor.

In conclusion, we hold that the portion of the court's order purporting to grant summary judgment to Mr. Munroe as defendant John Doe is null and void. We reverse that part of the court's order granting summary judgment to Dr. Haller regarding his own alleged personal negligence and that part granting summary judgment to Health Systems and Hospital Association with regard to Mr. Parker's attempts to impute any negligence proven on behalf of Mr. Munroe. Last, we affirm that part of the court's order granting Health Systems and Hospital Association summary judgment with regard to Mr. Parker's attempt to impute any negligence proven on behalf of Dr. Haller.

Remanded for further proceedings consistent with this opinion.

THOMAS, J., filed a specially concurring opinion.

CARDINE, J., filed an opinion concurring in part and dissenting in part, in which BROWN, C.J., joined.

THOMAS, Justice, specially concurring.

I am in accord that the summary judgment in favor of Dr. Haller and the Union Pacific Railroad Employees Hospital Association (Hospital Association) and the Union Pacific Railroad Employees Health Systems (Health Systems) must be reversed. All of us agree that Dr. Haller was an independent contractor, and no liability for any of his negligence can be imputed to Hospital Association and Health Systems. With respect to Ron Munroe, I analyze the situation somewhat differently from the majority and quite differently from the dissenting justices.

I think that the applicable rules are summarized in *Metzger v. Kalke,* Wyo., 709 P.2d 414 (1985). We there explained *Harris v. Grizzle,* Wyo., 625 P.2d 747 (1981), noting that the defendant physicians did not rely solely on the absence of expert testimony by the plaintiff to justify a summary judgment in their favor. We pointed

out that, according to the rule in other jurisdictions, a " * * * nonmoving plaintiff has no obligation to present expert testimony at the pretrial stage, unless the movant establishes that no material questions of fact exist with respect to the allegations in the complaint." *Metzger v. Kalke,* supra, 709 P.2d at 422.

In this instance, the summary judgment materials relied upon by Hospital Association and Health Systems certainly were no better than those presented by Parker. I question whether Dr. Gasser's testimony was sufficient even to lay a foundation as to the standard of care for a physician's assistant and whether or not Ron Munroe met that standard. Consequently, I would hold that the summary judgment in favor of Hospital Association and Health Systems must be reversed to the extent that negligence of Ron Munroe may be imputed to those defendants. Parker had no obligation to present expert testimony until the defendants had supplied appropriate affidavits or discovery materials which indicated there was no genuine issue of material fact as to the negligence of Ron Munroe. This they failed to do. Consequently, although I agree with the dissenters that the affidavit of Dr. Hoke was insufficient, in my view, it does not make any difference in this case.

CARDINE, Justice, concurring in part and dissenting in part, with whom BROWN, Chief Justice joins.

I concur in the reversal of summary judgment granted Dr. Haller and dissent from reversal of the summary judgment granted appellee Health Systems and Hospital Association (hereinafter HS and HA). As the majority opinion states, Dr. Haller was an independent contractor whose negligence, if any, is not imputed to HS and HA. The acts of Ron Munroe, the physician's assistant, are imputed to HS and HA because of the employer-employee relationship, but there was no evidence that he was negligent. The evidence is simply uncontroverted that Ron Munroe saw appellant when a medical doctor was unavailable, ice packed and wrapped his wrist in an ace bandage, and, in the words of appellant's

attorney and expert, "told him to return in two days if he was not better." Dr. Gasser, testifying in deposition, was of the opinion that what Munroe did "would be reasonable care." Appellant's expert, Dr. Hoke, a general practitioner, stated in his affidavit only that he was "familiar with the standards of care for *general practitioners* in the Rocky Mountain region." (Emphasis added.) He claimed no familiarity with the standard of care required of a physician's assistant. Nevertheless, he stated in his affidavit:

"The standard of care afforded Mr. Parker was below the standard of care both from the physician's assistant and from Dr. Haller."

Each of the doctor/expert medical witnesses stated their opinion as to whether the acts of Ron Munroe satisfied the standard of care required of a physician's assistant. Opinion evidence, by an expert, is entirely appropriate under Rule 702, W.R.E., which provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

But the expert witness must be qualified to give his opinion—that is, there must be a proper foundation. In this case, there was no foundation for Dr. Hoke's opinion as to Ron Munroe, he claiming only to be familiar with the standard of care for general practitioners. Thus, upon the uncontroverted affidavit and deposition testimony of appellees, summary judgment for HS and HA was proper and should be affirmed.

The majority purports next to reverse a summary judgment granted Ron Munroe as a defendant by the name of John Doe. An interesting disposition, especially so since it appears from the record that neither Ron Munroe nor John Doe was ever granted summary judgment. The majority opinion was revised in response to the dissent but, as revised, still declines to recog-

nize that the summary judgment order grants "the Defendants' *motions* for summary judgment." The only *motions* for summary judgment that could have been granted were those filed; the only motions filed were by Health Systems, Hospital Association, and Dr. Haller. Neither Ron Munroe nor John Doe ever filed a motion for summary judgment. It, therefore, could not have been granted and can neither be affirmed nor held null and void.