1998 OK 42

**Glenn C. WILLIAMS, Appellant,**

v.

**TULSA MOTELS, an Oklahoma Limited Partnership; Sam J. Friedman, General Partner; Firal L. Ryder, General Partner; Byrum W. Teekell, Limited Partner; John Franks, Limited Partner, and Ben Oklahoma, Inc., an Oklahoma Corporation, General Partner, Appellees.**

No. 89857.

Supreme Court of Oklahoma.

May 18, 1998.

Dissenting Opinion May 19, 1998.

Dissent Corrected May 21, 1998.

Thomas M. Askew, Pray, Walker, Jackman, Willamson & Marlar, Tulsa, for Appellant.

Phil R. Richards, Rachel C. Mathis, Richards & Associates, Tulsa, for Appellees.

HODGES, Justice.

¶ 1 The issue before this Court is whether the trial court's grant of summary judgment was proper. We find that summary judgement was proper.

## I. FACTS

¶ 2 The plaintiff, Glenn C. Williams, was a guest at the Holiday Inn Holidome in Tulsa, Oklahoma. The Holidome is owned by the defendants. While leaving the Holidome, Williams descended a staircase. At the bottom of the stairs, Williams had to make a turn to exit the Holidome. About three or four steps after the turn, a maid was mopping the floor with her service cart placed beside her and in front of an ice machine.

When Williams started to pass between the cart and the ice machine, he slipped and fell, injuring himself.

¶ 3    Williams filed suit against the owners of the Holidome for his injuries resulting from this fall. The trial court rendered summary judgment in favor of the defendants, finding that the danger from the wet floor was open and obvious. The Court of Civil Appeals reversed, relying on a statement in Williams' deposition that the maid saw Williams coming down the stairs and moved so that he could pass between the service cart and the ice machine; a fact not relied on by Williams in the trial court. Further, Williams did not assert that the maid's stepping aside mislead him as to the condition of the floor. Williams did not even allege that the maid's actions lead him to believe the floor was dry.

¶ 4    The Court of Civil Appeals held that "reasonable persons might conclude that while Motel's employee, standing with a mop in hand, should alert a patron to the possibility of a wet floor, the fact the employee 'moved to the side of the cart to make a pathway' so Williams could pass might be construed as a signal by the employee that the area was safe to traverse, thus masking the hazard." The defendants filed a petition for certiorari. In the petition for certiorari, the defendants assert that the Court of Civil Appeals erred in addressing the issue of the effect of the maid's stepping aside to let Williams pass because Williams did not assert in the trial court that he was misled by the maid's stepping aside.

## II.  SUMMARY JUDGMENT

¶ 5    Summary judgment is proper when there is no genuine issue of material fact. Okla. Stat. tit. 12, ch. 2, app. 1, rule 13 (1991). The moving party is charged with showing that no genuine issue of material facts exist. *Id.* It is then incumbent on the party opposing the motion to submit a written statement accompanied by evidentiary material as to material facts which the party contends are in dispute. *Id.*; *Fowler v. Nor-*

*man Municipal Hospital,* 1991 OK 30, ¶ 6, 810 P.2d 822, 824. On appeal, the party opposing the motion cannot "rely on appeal on any fact or material that is not referred to or included in the written statement." Okla. Stat. tit. 12, ch. 2, app. 1, rule 13(b) (1991).

## III.  ANALYSIS

¶ 6    It is undisputed that Williams was a business invitee. *See McKinney v. Harrington,* 1993 OK 88, ¶ 8, 855 P.2d 602, 604. The duty of the invitor is to "exercise reasonable care to prevent injury to a business invitee." *Taylor v. Hynson,* 1993 OK 93, ¶ 16, 856 P.2d 278, 280. The invitor has no duty to protect against open and obvious dangers. *McKinney,* 1993 OK 88, ¶ 9, 855 P.2d at 604. The rule, long ago set out in the case of *City of Tulsa v. Harman,* 1931 OK ——, 148 Okla. 117, 299 P. 462, and reaffirmed in *C.R. Anthony Co. v. Million,* 1967 OK 231, ¶ 6, 435 P.2d 116, 117, provides:

> The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is [not] liable for injury to an invitee resulting from a *danger which was obvious or should have been observed* in the exercise of ordinary care.

¶ 7    It is clear from the evidentiary material that Williams knew or should have known that the floor was wet. Williams testified: "I turned away from the stairwell and started walking toward the outside door, you know, it's close enough proximity to the end of the stairs that there was room to take three or four steps, and obviously I could see her and the cart and, you know, there was a path between that area, and I was going to head to that area, hit a wet spot and went down." Williams then testified: "I think I saw her actually mopping in the area that we were about to walk through...." In Williams' deposition testimony, he stated that he saw the maid step aside so that he could pass. Before falling, Williams saw the cart and the maid who was holding a mop. Williams even thinks he saw the maid actually mopping the floor. If Williams saw the

maid step aside, he must have seen her before he fell. Thus, Williams either knew or should have known of the dangerous condition of the floor.

¶8 It is clear that the danger of the wet floor was open and obvious and Williams knew of the danger when he chose to walk on the wet floor. The defendants were not liable to Williams for an injury resulting from a danger which was obvious or should have been observed in the exercise of ordinary care. *McClendon v. McCall,* 1971 OK 123, ¶13, 489 P.2d 756, 758. Thus, summary judgment was proper for the defendants.

¶9 Even though the trial court was correct in rendering judgment for the defendants, the Court of Civil Appeals reversed. The Court of Civil Appeals surmised that by the maid's moving aside, Williams could have been misled into believing that the floor was safe. In the trial court, Williams did not even infer that he was deceived by the maid's stepping aside. Williams did not rely on this fact or this part of his deposition in his written statement responding to the defendants' motion for summary judgment to show that a substantial controversy existed. A review of the record before this Court shows that the danger was open and obvious. Further, the record on appeal does not support a finding that there is a genuine issue of material fact as to whether Williams was misled by the maid's stepping aside.

¶10 The Court of Civil Appeals reversed relying on a fact not in dispute—whether Williams was deceived by the maid's stepping aside. Because Williams' written statement in opposition to the motion for summary judgment did not rely on or refer to this fact, it was not a proper basis on which the Court of Civil Appeals to base its decision. Okla. Stat. tit. 12, ch. 2, app. 1, rule 13(b) (1991). Based on the record on appeal, there is no genuine issue of material fact, and summary judgment for the defendants was proper. *See id.*

## IV. CONCLUSION

¶11 The defendants did not breach a duty to Williams to warn against the wet floor, an open and obvious danger. The trial court correctly rendered judgment in favor of the defendants. The Court of Civil Appeals erred in finding a controversy based on the maid's moving aside to allow Williams to pass because Williams did not rely on this fact in his statement opposing the motion for summary judgment. Further based on the record on appeal, there was no genuine issue of material fact. The opinion of the Court of Civil Appeals is vacated, and the judgment of the trial court is affirmed.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT AFFIRMED.

¶12 HODGES, LAVENDER, SIMMS, HARGRAVE and WATT, JJ., concur.

¶13 KAUGER, C.J., and WILSON, J., concur in part; dissent in part.

¶14 SUMMERS, V.C.J., "I join Justice Opala insofar as his opinion relates to Oklahoma summary judgment jurisprudence. I, too, would deny certiorari.", Opala, J., dissent.

OPALA, Justice, with whom SUMMERS, Vice Chief Justice, joins in part, dissenting.

¶1 The court vacates today the Court of Civil Appeals' [COCA] opinion and affirms summary judgment for the defendants in a premises liability case. COCA's reversal of that judgment rests on its conclusion that conflicting inferences may be drawn from the probative materials in the record which shed light on the "open and obvious" character of the offending hazard. Basing today's pronouncement on an *independent analysis of the record,* the court holds that COCA erred by relying on evidentiary material which the plaintiff did not expressly invoke in his trial court brief in response to the summary judgment motion.

¶2 I cannot accede to the court's view. Our sole task on certiorari is to review COCA's opinion *for conformity to the record*

*and to the applicable law.* Adverse summary relief is not the movant's due when his adversary fails to include a reference to an undisputed critical fact divinable from the materials offered by *both* parties. Just as the nisi prius court must do, so too appellate tribunals have an affirmative duty (prescribed by the standards of *Spirgis v. Circle K Stores, Inc.*[1]) to review and assay the legal sufficiency of *all* evidentiary materials tendered in summary process to support the relief sought.

¶ 3 COCA correctly determined that the defendants [movants] had failed to sustain their *onus probandi*—to produce evidentiary material that would *unveil* the offending defect to be an open-and-obvious hazard and *establish* its existence *as an undisputed fact supported by a single inference—that which favors only the defendants' theory.* Acting under the aegis of summary process, trial judges are *powerless to abridge a party's constitutional right to a trial by jury;*[2] nor can they alter the essence of Oklahoma's common-law principles governing the merits of a premises liability claim.[3] It is for these reasons that I recede from today's opinion and from the court's judgment.

## I

### THE ANATOMY OF LITIGATION

¶ 4 The plaintiff, Glenn C. Williams [Williams], was injured while an invitee on the defendants' [Tulsa Motels] business premises. After descending a staircase at the inn, Williams turned in the direction of an outside door, "hit a wet spot" and landed

on the floor. He fell in a hallway between the ice machine and the maid's cart. His deposition states that he did not know the maid had been mopping until he came upon her. He saw her "almost immediately" as he was taking a fall. She was standing at the other end of the cart with a mop in her hand. According to his evidentiary materials, Williams believed he first "saw her actually mopping in the area that [he] was about to walk through." When she saw (or heard) him "coming down the steps", she "moved to the side of the cart to make [for him] a pathway to the door."[4]

¶ 5 The trial court gave summary judgment to the defendants. COCA's opinion reversed. The dispositive issue now pressed on certiorari is whether the evidentiary material will support an inference that the offending defect may have had a deceptively innocent appearance. COCA's reversal rests on its conclusion that an inference favoring the presence of an actionable condition in the *locus in quo* could be drawn from the undisputed facts. Because I am convinced that the record supports COCA's view, I would deny certiorari.

## II

### ¶ 6 THE SUBSTANTIVE NORMS OF OKLAHOMA'S COMMON LAW GOVERN PREMISES LIABILITY

¶ 7 Tulsa Motels sought summary relief, arguing the law does not require that it protect the guests against an open-and-obvious hazard—a freshly mopped floor.[5] Williams responded that "conflicting infer-

1.  *1987 OK CIV APP 45, 743 P.2d 682* (approved for publication by the Supreme Court).

2.  For a discussion on Oklahoma's right to trial by jury, see Part IV *infra.*

3.  For a discussion of Oklahoma's common law that governs premises liability, see Part II *infra.*

4.  The quoted text is from Williams' deposition testimony, *which was attached to both the movants' and nonmovant's briefs below.*

5.  The law does not require the landowner to protect an invitee from dangers which are so apparent and readily observable that one would reasonably expect them to be discovered. *Henryetta Construction Co. v. Harris,* 1965 OK 88, 408 P.2d 522, 531; *Sutherland v. Saint Francis Hospital, Inc.,* 1979 OK 18, 595 P.2d 780, 783 (the duty to use ordinary care to maintain premises in a reasonably safe condition "does not require that an invitee be warned of or . . . otherwise [be] protected from perils that are open and obvious").

ences could be drawn from the facts and circumstances in evidence" as to whether (1) the "dangerous condition of the walkway had a deceptively innocent (or harmless) appearance," (2) "its [the dangerous condition's] extent could not be anticipated" and (3) the encountered "peril was an open and obvious danger."[6]

¶ 8 Williams was undisputedly an invitee on the defendant's premises.[7] Tulsa Motels owed him a duty to exercise ordinary care (a) to disclose the existence of dangerous defects, which though known to the owner, were unlikely to be discovered by the invitee[8] and (b) to keep the premises in a reasonably safe condition for the reception of its visitors. This duty extends to conditions and instrumentalities which are in the nature of hidden dangers, traps, snares, and the like.[9] Within this rule of premises liability, a "hidden danger" need not be totally or partially obscured from vision nor be withdrawn from sight; the phrase is used to describe a condition presenting a *deceptively innocent appearance of safety* which *masks a hidden danger.*[10] The openness of a hazard at a *locus in quo* depends on the entrant's ability to perceive, appraise and appreciate the presence of danger at a critical point in time.[11] If a premises defect is shown to have had a deceptively innocent appearance, the question whether it was open and obvious is for the jury.[12]

¶ 9 Whether harm occasioned by a defect is actionable must be measured by an objective standard of due care. The law's test is whether under like or similar circumstances an ordinary prudent person would have been able to see the hazard in time to avoid harm.[13] *For the case now before the court*

---

6. Williams relies on (a) *Byford v. Town of Asher*, 1994 OK 46, 874 P.2d 45, 51, (Opala, J., concurring) and (b) *Jack Healey Linen Service v. Travis*, 1967 OK 213, 434 P.2d 924, 927–28. Williams directs us to the following text in *Byford, supra* at 52 and 54:

   "Whether harm from an *open and obvious* defect is actionable depends on the *objective standard of due care—i.e.,* whether under similar or like circumstances an ordinary prudent person would have been able to see the defect in time to avoid being injured. * * * This defense (alleging an "open an obvious" defect and "contributory negligence") raises clearly questions for the jury." (Emphasis in original).

   In *Jack Healey Linen Service, supra* at 927–28, Williams relies on the following text:
   "While the general physical condition might be familiar to the actor, a particular risk from the known defect could nevertheless, under the circumstances of a given occasion, be incapable of appreciation. If, as here, *conflicting inferences may be drawn from the facts and circumstances in evidence as to whether the offending hazard did have a 'deceptively innocent appearance',* or its extent could not be anticipated, neither the trial court nor this court may declare that the peril was obvious and apparent and that recovery is precluded as a matter of law. *The question is one for the jury... .*" (Emphasis supplied).

7. Real property entrants fall into three categories: trespasser, licensee, and invitee. The terms trespasser, licensee, and invitee denote a graduated ranking that represents the degree of beneficial interest an owner has in another person's presence on his property. *Pickens v. Tulsa Met-*

ropolitan Ministry, 1997 OK 152, 951 P.2d 1079, 1083. Entry status determination is critical in a premises liability case because the law's duty of care that an owner must exercise expands (or contracts) in accordance with an entrant's status on the premises. *Byford, supra* note 6 at 51 (Opala, J., concurring).

8. *Brown v. Nicholson, Pate, and Spears*, 1997 OK 32, 935 P.2d 319, 321; *Henryetta Construction Co., supra* note 5 at 531–32.

9. *Brown, supra*, note 8 at 322.

10. At common law, a "masked hazard" on the premises presents a jury question. It unveils a condition different in legal characteristics from an open-and-obvious defect. *Henryetta Construction Co., supra* note 5 at 531.

11. *Byford, supra*, note 6 at 52 (Opala, J., concurring); *Henryetta Construction Co., supra* note 5 at 531; *Jack Healey Linen Service, supra* note 6 at 927–28.

12. In COCA'S opinion now on certiorari, Judge Goodman, its author, aptly described the offending defect at the *locus in quo* as a "masked hazard".

13. *Byford, supra* note 6 at 52 (Opala, J., concurring); *Henryetta Construction Co., supra* note 5 at 531; *Jack Healey Linen Service, supra* note 6 at 927. Failure to remove known but obvious hazards by alteration or reconstruction of the premises is not a breach of the landowner's duty to an invitee. *Rogers v. Hennessee*, 1979 OK 138, 602 P.2d 1033, 1034; *Buck v. Del City Apartments, Inc.*, 1967 OK 81, 431 P.2d 360, 365.

*that critical element of proof came to be supplied by the evidentiary material which shows the motel maid stepping to the side of the cart, as if pointing to a pathway for the plaintiff to use as a passage between the cart and the ice machine.*

¶ 10 The probative materials clearly support the correctness of COCA's assessment of the record. Under the standards that govern the *state* (as distinguished from the federal) summary process, we are powerless to disturb COCA's reversal of the nisi prius summary judgment. Its opinion rests on acceptable evidentiary substitutes.

### ¶ 11 *The Analogy To Be Drawn To Automobile Accident Cases*

¶ 12 The masked hazard introduced by the maid's conduct at the *locus in quo* is akin to that created when a motorist motions to another driver (or a pedestrian) that it is safe for the latter to enter (or cross) the road ahead. Although at common law a motorist generally has no duty to signal or warn another (or to guide a pedestrian safely across a street), when one voluntarily undertakes such a task, the actor is required to do so carefully.[14] A motorist's signaling motion might be either a sign of yielding the right-of-way to another (as an act of frustration or otherwise) or it could be interpreted as an indication for a safe crossing. *It is generally for a jury to determine what significance may reasonably be ascribed to a motorist's hand signal.*[15]

### III

¶ 13 **STATE SUMMARY PROCESS (AS DISTINGUISHED FROM THAT IN FEDERAL COURTS) DOES NOT ALLOW THE TRIAL JUDGE** *TO WEIGH* **THE PROOF TENDERED BY PROBATIVE MATERIALS**

¶ 14 *The norms for conduct of summary process comprise adjective law.* Its regime changes no substantive norms in Oklahoma law, statutory or unwritten, which governs premises liability; nor does it affect a party's constitutional right to trial by jury. While in federal court a judicial functionary *may*, in a limited fashion, *weigh* the probative materials to determine if a rational jury would give a verdict to the plaintiff,[16] a state (trial or appellate) judge is governed by vastly different presubmission standards.[17]

#### A.

### ¶ 15 **State Summary Process**

¶ 16 The focus in state summary process is not on facts a plaintiff might be able to prove

---

14. RESTATEMENT (SECOND) OF TORTS § 311. The Restatement gives as an illustration a truck driver who signals to a following car that it is safe to pass. In reliance on that signal a car proceeds and collides with an oncoming vehicle. The signaling truck driver's principal is subject to liability to the injured occupants in the passing vehicle. *See also* Prosser, Law of Torts (4th ed.) 343 § 56 (if a truck driver gratuitously signals to a car behind him that it may safely pass, "he will be liable if he fails to exercise proper care and injury results").

15. *Smith v. Johnson,* 183 Ariz. 38, 899 P.2d 199, 205–206 (App.1995); *Cunningham v. National Service Industries,* 174 Ga.App. 832, 331 S.E.2d 899, 901–902 (1985); *Lindsley v. Burke,* 189 Mich.App. 700, 704–705, 474 N.W.2d 158, 161 (1991); *Sweet v. Ringwelski,* 362 Mich. 138, 106 N.W.2d 742, 745 (1961); *Thelen v. Spilman,* 251 Minn. 89, 86 N.W.2d 700, 706 (1957); *Miller v. Watkins,* 355 S.W.2d 1, 4 (Mo.1962); *Riley v. Board of Education,* 15 A.D.2d 303, 223 N.Y.S.2d 389, 391 (1962); *Vogel v. Langer,* 131 Pa.Cmwlth. 236, 569 A.2d 1047, 1048 (1990) (a bus driver used hand signals to communicate with another driver and prompted the latter to proceed into an area where his car was struck by another vehicle); *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291, 1295 (1985)(the bus driver sounded his horn and waved the plaintiff pedestrian across the street in front of a bus and into the path of an oncoming vehicle); *Armstead v. Holbert,* 146 W.Va. 582, 122 S.E.2d 43, 44 (1961). *But cf. Askew v. Zeller,* 361 Pa.Super. 35, 521 A.2d 459, 462 (1987); *Shank v. Government Employees Ins. Co.,* 390 So.2d 903, 905 (La.App. 1981); *Dix v. Spampinato,* 278 Md. 34, 358 A.2d 237, 239 (1976); *Van Jura v. Row,* 175 Ohio St. 41, 191 N.E.2d 536, 538 (1963); *Devine v. Cook,* 3 Utah 2d 134, 279 P.2d 1073, 1078 (1955); *Nolde Bros., Inc. v. Wray,* 221 Va. 25, 266 S.E.2d 882, 884 (1980)(the signal cannot reasonably be interpreted as anything other than a yield of the right-of-way or gesture of courtesy).

16. *See* Part III(B) *infra* for the standards that govern federal summary process.

17. *See* Part III(A) *infra,* for state summary process.

at trial (*i.e.*, the legal sufficiency of evidence that could be adduced), but rather on whether the evidentiary materials, viewed as a whole, (a) show undisputed facts on some or all material issues, which facts (b) will support but a single inference that favors the movant's quest for relief.[18] Summary process—a special procedural track to be conducted with the aid of acceptable probative substitutes [19]—is a search for undisputed material facts that would support but a single inference in the movant's favor. It is a method for identifying and isolating nontriable fact issues, not a device for defeating the opponent's right to trial by jury. *Only that evidentiary material which may entirely eliminate from testing by trial some or all material fact issues will provide legitimate support for nisi prius use of summary relief, in whole or in part.* All inferences to be drawn from the evidentiary materials must be viewed in the light most favorable to the nonmoving party.[20] The function of summary process is not to set the stage for trial by affidavit, but to afford a method of summarily terminating a case (or deciding some of its issues) when only questions of law are tendered.[21]

¶ 17 The very same test that governs Oklahoma's summary adjudication process also applies when the court entertains a defendant's demurrer to plaintiff's evidence.[22] When passing on a defendant's demurrer, the judge *cannot weigh* the plaintiff's evidence; all conflicting proof is to be disregarded and plaintiff's evidence must be accepted as true. If there is proof to support the plaintiff's claim, its elements must be submitted to a jury.[23]

### ¶ 18 *Summary Process Is Not Another Form of Adjudication That Will Follow A Nonmoving Party's Default*

¶ 19 The *undisputed critical fact* in Williams' evidentiary materials (upon which COCA relies for reversal) *is deliberately disregarded* in today's pronouncement. Plaintiff is punished for his *failure* to rely below on a snippet of the record which COCA deemed dispositive on appeal. In this there is plain error. The path of summary process does *not* lead to a *default* judgment that rests on a nonmovant's failure to emphasize (or to challenge) materials that can then be taken as true.[24] Even a defendant's *uncontested* motion will not, *ipso facto*, entitle the movant to the summary relief sought. *Spirgis v. Circle K Stores, Inc.*[25] teaches that— before entering summary judgment—the

---

18. *Hulsey v. Mid–America Preferred Ins. Co.*, 1989 OK 107, 777 P.2d 932, 936 n. 15. An order that grants summary relief disposes solely of law questions. It is hence reviewable *de novo*. An appellate court claims for itself plenary, independent and nondeferential authority to re-examine a trial court's legal rulings. *Kluver v. Weatherford Hospital Auth.*, 1993 OK 85, 859 P.2d 1081, 1084. Oklahoma's summary adjudication process is *similar but not identical* to that followed in the federal judicial system. *See Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

19. " 'Acceptable probative substitutes' are those which may be used as 'evidentiary materials' in the summary process of adjudication." *Jackson v. Oklahoma Memorial Hospital*, 1995 OK 112, 909 P.2d 765, 773 n. 35; *Gray v. Holman*, 1995 OK 118, 909 P.2d 776, 781 n. 16 (quoting from *Seitsinger v. Dockum Pontiac Inc.*, 1995 OK 29, 894 P.2d 1077, 1080–81); *Davis v. Leitner*, 1989 OK 146, 782 P.2d 924, 926–27.

20. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051, 1053.

21. *Russell v. Board of County Com'rs, Carter County*, 1997 OK 80, 952 P.2d 492, 503; *Bowers v. Wimberly*, 1997 OK 24, 933 P.2d 312, 316; *Stuckey v. Young Explor. Co.*, 1978 OK 128, 586 P.2d 726, 730.

22. *Roach v. Atlas Life Ins. Co.*, 1989 OK 27, 769 P.2d 158, 163.

23. *Roach, supra* note 22 at 163.

24. 12 O.S.1991 § 688.

25. *See supra* note 1 at 684. Failure to respond does not result in a confession of judgment. At a maximum, it will admit, without contest, all undisputed facts in the movant's "statement" which support *only* favorable inferences from the movant's acceptable evidentiary substitutes. The *Spirgis*-mandated judicial consideration is not confined to examination of the movant's statement; it must extend to the entire evidentiary material in the case.

judge must carefully examine the probative content of the record on file in the case to ascertain that (1) the movant's materials show no substantial controversy as to the material facts and (2) the dispositive facts can be shown by admissible evidence. *The motion's legal soundness is to be tested not by a lawyer's advocacy in a nisi prius brief, but by the sufficiency of the tendered evidentiary materials to support the disposition made.*[26] In short, Williams' *failure to respond at nisi prius by precise reference to the critical parts of probative materials will not be enough to sustain the movants' quest for judgment sans trial.* When evaluating Tulsa Motels' demand for summary judgment, the trial judge was duty-bound to make an *independent examination of the evidentiary content of the record* to determine the presence of nontriable facts to defeat the claim.

## ¶ 20 *Analysis of the Record*

¶ 21 It is reasonable to infer from the act of recent mopping at the *locus in quo* that the floor might have been slippery. The opposite, and equally reasonable, inference is that while the presence of the maid with a mop in her hands would alert Williams to the possibility of a wet and hence slippery floor, that fact, when combined with the maid's inviting body movement (stepping to the side of the cart as if pointing to a correct pathway) would give a casual observer an indication of safe passage in the direction indicated, thus effectively diverting attention from

(or masking) the about-to-be-encountered hazard of a freshly-mopped, slippery surface. While Williams' evidentiary material appears, in some measure, contradictory in spots—he was obviously uncoached and disarmingly candid—we are powerless to condemn it for lack of plaintiff's specific nisi prius reliance on the critical snippet used for reversal by COCA.

¶ 22 In short, the evidentiary material reveals *both* (1) a masked danger *plus* (2) an agent's (the maid's) affirmative body movement that invites a guest to step onto the *locus in quo.* Corrective relief in an appellate tribunal is not a helpless tool (or captive victim) of a lawyer's strategy choice that may have soft pedaled (or overlooked) the critical part of a record. If there is in fact evidentiary material supportive of an inference in favor of the plaintiff's claim—which inference may be drawn from undisputed facts—it is an appellate court's duty to reverse summary judgment and remand the cause for jury resolution.

## B.

## ¶ 23 **Federal Summary Judgment Process**

¶ 24 Gauged by the federal summary judgment standards—refined by the "trilogy" made up of the U.S. Supreme Court's teachings in *Celotex Corp. v. Catrett,*[27] *Anderson v. Liberty Lobby, Inc.,*[28] and *Matsushita Electric Industry v. Zenith Radio Corp.*[29]—Williams' premises liability claim might not pass legal muster and hence end up in summary judgment for the defendant.

¶ 25 The Court's 1986 trilogy announced precise standards for *determining the exis-*

---

**26.** *Spirgis, supra* note 1 at 684.

**27.** 477 U.S. 317, 321, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *Celotex* marked a shift in the burden of proof in federal summary practice. There, a widow sued a manufacturer for the asbestos-related death of her husband. The Celotex Corporation moved for summary judgment based on the widow's failure to produce evidence that her husband had been exposed to its products. The company argued that the widow's response consisted of inadmissible hearsay. The Court found that summary judgment would be mandated if the widow failed, after adequate time for discovery, to present evidence of matters on which she had the burden of proof. The case was remanded to a circuit court to determine whether the evidence she submitted was suffi-

cient to defeat the motion for summary judgment. In short, if the issue is one on which the movant does not bear the burden of proof, and if, after an adequate time for discovery has passed, the party respondent fails to make a showing sufficient to establish the existence of an element essential to its case, summary judgment is the movant's due.

**28.** 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (a publisher and author moved for summary judgment in a libel suit brought against them by a non-profit organization).

**29.** 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (the defendants in a civil antitrust case moved for summary judgment against the plaintiffs, who alleged that the defendants had engaged in a predatory pricing conspiracy).

tence of a genuine fact issue. *Matsushita,* the first of the trilogy cases, opened the door to a much-increased degree of judicial discretion in handling quests for summary judgment.[30] *Liberty Lobby* further extended a federal judge's discretion by allowing the directed-verdict standard to assist in determining the existence of a genuine material fact issue.[31] In both *Liberty Lobby* and *Matsushita* the Court made it more difficult for a nonmoving party—having the burden of persuasion at trial—to meet its probative onus in summary judgment process.[32] The *former* opinion requires the trial judge to inquire whether *a jury could reasonably find the evidence "clearly convincing"* as to a particular issue. The Court rejected the notion that the nonmovant could avoid summary judgment and meet its burden simply by showing the mere existence of "some" factual dispute between the parties. Rather, *the nonmoving party must identify a factual dispute that is genuine and involves a mate-*

rial issue. Underscored was the notion that not all evidentiary conflicts constitute "genuine" disputes of fact.[33] Nonmoving parties can establish a genuine issue of fact by probative material that would be sufficient *for a "reasonable jury"* to return a verdict in favor of the nonmoving party.[34]

¶ 26 Commentators have noted that the post–1986 federal summary process constitutes a judiciary's intrusion into an area formerly viewed as almost exclusively within the jury's province.[35] According to one writer, the expansive *Liberty Lobby* teachings raise grave concerns about a civil litigant's constitutional right to a jury trial.[36]

### IV

¶ 27 **CONSTITUTIONAL RIGHT TO TRIAL BY JURY IN A CIVIL CASE UNDER OKLAHOMA LAW**

¶ 28 Today's summary judgment analysis constitutes an impermissible judicial inter-

---

30. The Court in *Matsushita* weighed the evidence before it, concluded that plaintiffs' claims were implausible, and required them to "come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita, supra* note 29, 475 U.S. at 587, 106 S.Ct. at 1356.

31. In *Liberty Lobby* the Court stated that a "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Supra* note 28, 477 U.S. at 249, 106 S.Ct. at 2510–2511. In other words, a judge must evaluate the sufficiency of the evidence without weighing its credibility. *Id.* 477 U.S. at 255, 106 S.Ct. at 2513–2514.

32. In *Liberty Lobby, supra* note 28, 477 U.S. at 252, 106 S.Ct. at 2512, the Court stated that "[t]he *mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . .*" (Emphasis supplied). Similarly, in *Matsushita, supra* note 29, 475 U.S. at 586, 106 S.Ct. at 1356, the Court stated that in order to establish a genuine issue for trial, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

33. *Liberty Lobby, supra* note 28, 477 U.S. at 248, 106 S.Ct. at 2510.

34. *Liberty Lobby, supra* note 28, teaches that if the nonmoving party's affidavits present material

that *"is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence"* there can be no genuine issue of fact. *Id.* 477 U.S. at 254, 106 S.Ct. at 2513 (emphasis supplied). For the first time, the Court equated the test for determining whether a genuine factual dispute exists with the test for granting a directed verdict at trial. *Id.* 477 U.S. at 251, 106 S.Ct. at 2512.

The 1986 trilogy has been rejected in several states, among which appear to be Alaska, Indiana, Kentucky, Texas and Wyoming. *Moffatt v. Brown,* 751 P.2d 939, 943 (Alaska 1988); *Chester v. Indianapolis Newspapers, Inc.,* 553 N.E.2d 137, 140–141 (Ind.App.1990); *Bandido's, Inc. v. Journal Gazette Co., Inc.,* 575 N.E.2d 324, 326–327 (Ind.App.1991); *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 482–483 (Ky.1991); *Casso v. Brand,* 776 S.W.2d 551, 556–557 (Tex.1989); *Parker v. Haller,* 751 P.2d 372, 376-377 (Wyo.1988). The Supreme Court of Texas based its refusal to espouse the trilogy on a state constitutional provision almost identical to that in Art. 2 § 19, Okl.Const., infra note 37. *Casso, supra* at 556–557. The Texas counterpart of the cited section states that "[t]he right of trial by jury shall remain inviolate(4)27" Art. 1 § 15, Tex.Const.

35. Dan W. Hotsenpiller, Comment, *Anderson v. Liberty Lobby, Inc.: Federal Rules Decision or First Amendment Case,* 59 U.Colo.L.Rev.933, 953–55.

36. *Hotsenpiller, supra* note 35 at 953–54.

vention in the fact-finding process. It violates the plaintiff's fundamental-law right to trial by jury under the standards of Art. 2 § 19, Okl. Const.[37] That section keeps "inviolate" the common-law norms for drawing the line at which submission to the triers is a party's due. Because these standards are enshrined in the state constitution, they cannot be abrogated (impaired or abridged) by legislative or judicial action.[38]

¶ 29 In contrast to Oklahoma's system, in federal courts the right to a jury trial is governed by the Seventh Amendment to the U.S. Constitution.[39] The primary purpose of the Seventh Amendment is not quite the same as that of Art. 2 § 19. It is to keep in effect the common-law distinction between the duties of the court and those of the jury. Except as modified by the federal constitution itself, the right to trial by jury was frozen as it stood in the 1787 English jurisprudence. The trilogy's 1986 *reformulation of traditional summary judgment doctrine* marks a significant departure from the U.S. Supreme Court's past Seventh–Amendment construction.[40] While the latter's jurispru-

dence is indeed binding in federal courts, it does not affect the process of summary adjudication in the state courts. *Because the Seventh Amendment is unenforceable against them, the states remain utterly free from its restraints.*[41]

## V

## SUMMARY

¶ 30 Judgment may not be entered for the summary process movant unless the trial judge has *independently examined the record* and determined an absence of material fact issues submissible to the trier. When COCA has made a record's assessment and reversed nisi prius summary judgment for legal error, this court's role on certiorari is limited to testing the appellate decision for conformity to the law and to the record. Its function is not to recomb the probative materials with a view to imposing on the nonmovant rigid conformity to his position in arguments pressed on the trial court. Because Williams' nisi prius and appellate reliance on

---

37. The pertinent terms of Art. 2 § 19, Okl. Const., provide:

    "The *right of trial by jury shall* be and *remain inviolate.* ..." (Emphasis supplied.)

38. *Seymour v. Swart*, 1985 OK 9, 695 P.2d 509, 511. The fundamental law's mandate for trial by jury has reference to the *right that existed in the* territories at the time the state constitution was adopted. That right was not predicated upon territorial statutes, but rather upon "the federal constitution and the course of the common law." *Maryland National Insurance Co. v. District Court*, 1969 OK 73, 455 P.2d 690, 692; *Keeter v. State ex rel. Saye*, 82 Okl. 89, 198 P. 866, 868–69 (1921).

39. The pertinent part of the Seventh Amendment to the U.S. Constitution is:

    "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...."

40. In applying the Seventh Amendment, the Court has traditionally taken an *historical approach*, which it combined with elements of functionality. F. James & G. Hazard, CIVIL PROCEDURE §§ 8.2, 8.3, 8.11 (3d ed.1985); 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 92 at 612. If the claim (or its historical analogue) in 1791 was one *at law*, a jury is generally available

to the claimant as of right. *Tull v. United States*, 481 U.S. 412, 418, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). If the claim (or its historical counterpart) was one *in equity* in 1791, a jury trial is not required under the Seventh Amendment (*Tull, supra* ), although the judge may impanel an advisory jury. Fed.R.Civ.P. 39(c). When the claim and relief sought intermingles components that were historically both legal and equitable, a frequent consequence of the merger of law and equity accomplished in the federal courts by the rules of civil procedure, the claimant ordinarily may have a jury trial—at least for the legal aspects of the case—so long as providing a jury trial is not impractical or does not vitiate the essential character of the action. *Wright, supra* at § 92.

41. In *Gasperini v. Center For Humanities, Inc.*, 518 U.S. 415, 431–33, 116 S.Ct. 2211, 2222, 135 L.Ed.2d 659 (1996), the Court stated that "[t]he Seventh Amendment ... *governs proceedings in federal court, but not in state court...*" (emphasis added), citing *Walker v. Sauvinet*, 92 U.S. 90, 92, 23 L.Ed. 678 (1876). *See also Pearson v. Yewdall*, 95 U.S. 294, 24 L.Ed. 436 [1877]; *Maryland National Insurance Co. v. District Court*, 1969 OK 73, 455 P.2d 690, 692; *Harada v. Burns*, 50 Haw. 528, 50 Haw. 588, 445 P.2d 376, 380 (1968).

conflicting inferences is amply supported by the record's probative material and is legally sufficient to warrant COCA's reversal of summary judgment, I would deny certiorari.