**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

HAROLD W. BURLINGAME and
BARBARA J. BURLINGAME,

    Plaintiffs-Appellants,

v.

THE HOME INSURANCE COMPANY
OF ILLINOIS, a corporation,

    Defendant-Appellee.

No. 98-5089
(D.C. No. 96-CV-618-K)
(Northern District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **MAGILL**,[**] and **LUCERO**, Circuit Judges.

Harold and Barbara Burlingame appeal the denial of their motions for new trial

and judgment as a matter of law arising from an adverse jury verdict on their claim of

breach of contract. We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

The Burlingames own Towne South Shopping Center in Oklahoma City, Oklahoma, which was damaged in a wind and hailstorm that tore the roof. Appellee, The Home Insurance Company of Illinois, insured that property under an all-risk property policy which provided "replacement cost" for losses sustained to the insured property. After the storm, Home retained an independent adjustment firm to handle the Burlingames' claim, but the parties could not reach an agreement on the amount of the loss. Finally, after Home hired an independent roofing expert to examine the property, the parties stipulated to a payment of $106,953.44 without prejudice to the Burlingames' further recovery. Home tendered that sum and, two months later, offered an additional $52,653, raising the total amount tendered to $159,606.44. The Burlingames, however, refused to settle and subsequently filed a second proof of loss substantially increasing their original claim of loss to $374,515.[3]

---

[3]The roof in question was a simple metal deck in 1977 when the Burlingames bought the property. To prevent leakage, the deck was sprayed with a half inch of urethane foam in 1980. In 1989, the Burlingames installed a single ply membrane of rubber on the roof. Leaks persisted, and in an attempt to further repair the roof, hot tar was poured over the trouble spots, melting the rubber membrane. Eighteen months before the storm, Spectrum Associates evaluated the roof for the Burlingames and found it "not maintainable" because of all of the punctures, open holes where air conditioning units had been removed, and other deficiencies. After the storm, the Burlingames replaced the roof with a 5-ply built-up roof with a ten-year warranty.

The Burlingames filed suit in Tulsa District Court alleging breach of contract and the tort of bad faith on the part of Home. Home removed the action to federal court and moved for partial summary judgment on the bad faith claim.

The district court granted the motion, holding the replacement cost coverage of the policy was not contrary to Oklahoma law as maintained by the plaintiffs and the "legitimate dispute" between the parties over the valuation of plaintiffs' loss could not sustain a bad faith claim. At trial, on the remaining breach of contract claim, a jury found in Home's favor. The Burlingames moved for a new trial or judgment as a matter of law and now appeal the district court's succinct adverse ruling.

We review the denial of a motion for new trial under an abuse of discretion standard. *Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 514 (10th Cir. 1998). We review the denial of a motion for judgment as a matter of law *de novo,* examining the record, as did the trial court, to determine whether the evidence points only one way and is susceptible to no other reasonable inferences supporting the party opposing the motion. *FDIC v. United Pacific Ins. Co.*, 20 F.3d 1070, 1079 (10th Cir. 1994).

The Burlingames sought a new trial on grounds the court's refusal to grant some of their requested instructions was error and that partial summary judgment should not have been granted on their bad faith claim.[4] They raise the same issues here.[5]

---

[4]The Burlingames also claimed they were entitled to $34,482.25, a sum Home withheld for depreciation. The trial court found plaintiffs failed to move for judgment as a matter of law on the amount prior to submission of the case to the jury but, in any event,

(continued...)

The Burlingames complain the court's refusal to give their requested instructions on the "duties" Home owed them was error amounting to denying them "a fair trial under the public policy of Oklahoma." They postulate that in this diversity case the "Supreme Court has demoted the U.S. District Judge to the position of a State District Judge in every diversity case" involving only state law, and the duties arising from its insurance contract are implied in law. Although the argument is somewhat obscure, it appears appellants claim the source of the district court's error was its finding of no claim for the tort of bad faith. The Burlingames state Oklahoma law holds that implied-in law duties are contractual. Thus, they urge the court erred in refusing to give requested instructions, relying on **Buzzard v. Farmers Ins. Co., Inc.**, 824 P.2d 1105 (Okla. 1991), a bad faith insurance case.[6]

The Burlingames also complain about the court's refusal to give an instruction on the insurer's obligation to provide replacement coverage. They insist the insurer assumed

---

[4](...continued)
it could assume the amount was included in plaintiffs' claim for damages which the jury's adverse verdict fully rejected.

[5]They seem to have added a third claim that the grant of summary judgment in federal court is unconstitutional under the Oklahoma Constitution, Article II, § 19, relying entirely on the wholly unpersuasive authority of a **dissenting** opinion in **Williams v. Tulsa Motels**, 958 P.2d 1282, 1285 (Okla. 1998). Although they may now have abandoned that claim, it is not before us inasmuch as it was not raised in the district court.

[6]**Buzzard** is repeatedly miscited by appellants as 8<u>42</u> P.2d. **See Buzzard v. Farmers Ins. Co., Inc.**, 824 P.2d 1105 (Okla. 1991).

- 4 -

the risk to insure the roof and did not specify the old roof could only be replaced by an inferior roof.

Home retorts the case was tried solely as a breach of contract case. Moreover, all of the "duties" Home owed its insured, it maintains, were contained within the four corners of the insurance contract.

At the outset, it is apparent the Burlingames have blurred the distinctions between the tort of bad faith and the obligations which arise out of a contract. As Home has contended, the pretrial order, which limited the scope of the trial, makes clear the fundamental issue to be tried was whether Home owed money to the Burlingames under the insurance contract, and, if so, how much. With that knowledge in hand, we turn to the issues raised by the Burlingames on appeal.

When issues relating to jury instructions are raised on appeal, "[w]e review the district court's refusal to give a particular jury instruction for abuse of discretion. In assessing whether the court properly exercised that discretion, a reviewing court must examine the instructions as a whole to determine if they sufficiently cover the issues in the case on the facts presented by the evidence. The question of whether a jury was properly instructed is a question of law, and thus, our review is de novo." *United States v. Voss*, 82 F.3d 1521, 1529 (10th Cir. 1996) (quoting *United States v. Lee*, 54 F.3d 1534, 1536 (10th Cir. 1995)).

To support their argument the district court abused its discretion, the Burlingames rely indistinguishably on cases dealing with principles relating to the tort of bad faith like *Buzzard*, 824 P.2d at 1108, rather than on Oklahoma insurance cases resolved on contract principles. There is a manifest distinction between the two. Unlike the present case in which the claims arise from the execution of the contract, the cases relied upon by the Burlingames involve the insurers' refusal to perform the obligations of the contract. For example, in *Buzzard*, the insurance company refused to investigate the insured's claim or to attempt a settlement. *Id.* at 1107. In contrast, Home quickly undertook to determine the nature and extent of the injuries sustained by the Burlingames and to tender what Home believed was a reasonable settlement. There is simply no evidence that would justify the giving of any instruction which placed obligations on the defendant company that did not arise from the contract or misconstrued the obligations it was bound by that contract to perform. We do not accept the Burlingames' theory that bad faith is implicit in the breach of an insurance contract. Further, our review of the instructions as a whole does not lead us to the conclusion the district court erred.

The Burlingames contend the district court erred by granting a partial summary judgment dismissing their bad faith claim. As we understand their argument, they believe the district court "weighed" controverted facts and improperly rendered judgment as a consequence. They argue the court improperly viewed their "acts" in filing their proofs of loss for $274,710 and $374,515, and concluded the sums "contained many items and

expenses not covered by the policy." The Burlingames insist Home failed to make a timely evaluation of their loss (despite the fact the storm occurred on June 8 and the adjuster viewed the property on June 15); and that Home made no reasonable evaluation because it raised its settlement offers from $60,000 to $194,049 by October 1994 (after the Burlingames finally submitted a sworn proof of loss). Plaintiffs also assert Home failed to make a prompt payment offer because the restricted payment came one year and one month after the loss.

As the district court recognized, an Oklahoma insurer is not subject to a claim for bad faith if it "had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy." *McCoy v. Oklahoma Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992). Moreover, when an insurer conducts a reasonably adequate investigation of a claim, its belief the claim is unreasonable is not actionable. *Willis v. Midland Risk Ins. Co.*, 42 F.3d 607, 612 (10th Cir. 1994). These conclusions were reached by the district court in light of undisputed evidence that throughout plaintiffs' interactions with Home the only disagreement was the amount of the loss, not whether there was a loss or its extent. Moreover, in his deposition Mr. Burlingame stated he understood his obligation to file a sworn proof of loss and that replacement meant replacement of the identical property damaged.[7] It is evident to us, as

---

[7]The policy provision relating to replacement cost states: "This company's liability for loss on a replacement cost basis shall not exceed the smallest of the following amounts: A. the amount of this policy applicable to the damaged or destroyed property;

(continued...)

- 7 -

it must have been to the district court, only the disagreement between the parties over the extent of coverage and the value of the loss delayed recovery by the plaintiffs.

Moreover, plaintiffs' response to Home's motion for partial summary judgment raised no factual allegations that would support an action for bad faith. Indeed, their efforts were expended solely in attempting to convince the district court the facts before it would support such a claim as a matter of law. It is now plain to us the district court did not engage in a weighing of facts nor did it attempt to resolve any dispute other than issues of law. We see no error in its judgment. It is further evident this entire action has been driven by nothing more than plaintiffs' misconceived notion of the law and their rights under their contract of insurance.

**AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Circuit Judge

---

[7](...continued)
B. the replacement cost of the property or any part thereof identical with such property on the same premises and intended for the same occupancy and use; or C. the amount actually and necessarily expended in repairing or replacing such property or a part thereof."