2001 OK CIV APP 59

Frankie HATCHER, Plaintiff/Appellant,

v.

SUPER C MART, Defendant/Appellee.

No. 95462.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 5, 2001.

Tom Mullen, Adrienne B. Roberson, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, OK, for Plaintiff/Appellant.

Mark E. Bialick, Rodney D. Stewart, Durbin, Larimore & Bialick, Oklahoma City, OK, for Defendant/Appellee.

Opinion by KENNETH L. BUETTNER, Presiding Judge:

¶ 1 Plaintiff/Appellant Frankie Hatcher appeals from summary judgment entered in favor of Defendant/Appellee Super C Mart (Store). Hatcher filed her negligence suit after she was injured in a slip and fall accident at the Store. The Store sought summary judgment based on its contention that the undisputed facts established that it breached

no duty owed to Hatcher because the wet floor was an open and obvious hazard. We agree that the evidence in the record before the trial court established that the wet floor was an open and obvious condition. Summary judgment was proper because the record reveals no substantial controversy of material fact and that the Store is entitled to judgment as a matter of law; accordingly, the judgment is affirmed.

¶2 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.Supp.1993, Ch. 2, App.1. We will not reverse a grant of summary judgment where the record on appeal establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶3 The record on appeal includes evidence that Hatcher went to the Store, located in Wetumka, Oklahoma, at 2:00 p.m. on June 24, 1999. It was raining at the time and Hatcher testified that her shoes got wet as she walked from her car to the Store's entrance. Hatcher testified that she took one or two steps into the Store, and then slipped and fell onto her shoulder. Hatcher did not see any water on the floor and did not present any witnesses who saw water on the floor prior to her fall.

¶4 Hatcher testified that on June 24, 1999, she left her apartment with her grandson and went "uptown." She explained that it started raining while she waited for her grandson to come out of the drugstore and that after he came out they drove directly to the Store. Hatcher explained that it was raining enough that the windshield wipers were on as they drove.[1] Hatcher noticed there were a lot of cars at the Store, but she was unable to remember if she saw any

people going in or out of the Store before she went in. When Hatcher got out of her car to go into the Store it was still raining and she did not have an umbrella. Hatcher explained that the parking lot was wet enough to get her shoes wet.

¶5 She had walked one or two steps into the Store and turned toward the shopping baskets when both feet slipped out from under her. Hatcher testified she landed on her shoulder. Hatcher concluded the floor must have been wet to cause her to fall, but that she never saw any water on the floor before or after her fall. Hatcher could not state whether the water she believed was on the floor came from other customers or whether she tracked it in herself. Hatcher explained that she knew before she fell that if customers were going in and out of the Store in the rain that the floor would be wet. Hatcher testified that she was not watching the ground at the time she fell. Hatcher testified that the floor must have been wet since she fell, and she later testified that if the floor had been wet, she would have seen the water if she had looked down.

¶6 Hatcher further testified that she did not see any "wet floor" signs in the Store at the time of her fall. She stated she was not thinking about looking for such signs at the time, but that common sense would tell her that the signs should be there since it was raining. Hatcher testified that she regularly had shopped at the Store at least twice a week for several years and that there had always been carpeted mats on the floor inside the Store about two feet from the entry doors. Hatcher testified that the mats were not moved up right next to the door on the day she fell, despite the fact that it was raining. Hatcher also testified, however, that she did not see the carpeted mats at anytime on the day she fell. Hatcher was questioned at length about the placement of the carpeted mats and her answers can be best described as inconsistent.

¶7 Hatcher concluded that the Store had wronged her by not posting "wet floor" signs and by not placing the carpeted mats directly next to the threshold. However, it was stipulated at the hearing on the motion for sum-

---

1. Hatcher was unable to remember whether she    or her grandson was driving at the time.

mary judgment that photographs attached to Hatcher's response opposing summary judgment showed the placement of the mats at the time of Hatcher's fall, and they show that the mats were directly next to the thresholds of the doors to the Store. Hatcher admitted that she knows to wipe her feet when its raining in order to avoid slipping and falling. When asked why she did not look for a place to wipe her feet as she entered the Store on the rainy day in issue, Hatcher responded that she did not think about falling and therefore did not look for a place to wipe her feet.

¶ 8 The only other evidence of the existence of water on the floor came from the Store's manager, Daniel Underwood. He testified that he could see water from when Hatcher walked in.

¶ 9 After Hatcher fell, the Store contacted an ambulance which took her to Okmulgee Hospital where she was treated for a shoulder fracture and released the same day. Hatcher filed her negligence petition March 1, 2000.

¶ 10 Summary judgment was filed October 4, 2000. The journal entry of judgment indicates that at the hearing on the motion for summary judgment, Hatcher made oral motions to delay the ruling until after Hatcher's expert was deposed and to supplement the record with expert opinion. Both of these motions were denied.[2] On appeal, Hatcher asserts as disputed questions of fact: 1) whether the wet floor was open and obvious; 2) whether the water in which Hatcher slipped was tracked into the store by Hatcher herself or whether it was water tracked in by other customers; 3) whether the Store placed mats (which Hatcher alleges were for the purpose of protecting customers from the wet floor on rainy days) in such position that Hatcher was able to enter the Store without stepping on the mats which resulted in her fall; and 4) whether the Store's purchase of "wet floor" signs after Hatcher's fall indicated a failure to warn where a warning was required.

¶ 11 A business invitor has a duty to exercise reasonable care to prevent injury to an invitee, but an invitor owes no duty to protect against hazards which are open and obvious. *Williams v. Tulsa Motels,* 1998 OK 42, 958 P.2d 1282, 1284. *Williams* quoted *City of Tulsa v. Harman,* 1931 OK 73, 148 Okla. 117, 299 P. 462, 468, for the long-standing rule:

> The invitee assumes all normal and ordinary risks attendant upon the use of the premises, and the owner or occupant is [not] liable for injury to an invitee resulting from a *danger which was obvious or should have been observed* in the exercise of ordinary care. (Emphasis in Williams.)

¶ 12 Like the instant case, *Williams* involved a slip and fall on a wet floor. In that case, the plaintiff observed a hotel maid mopping the floor before he fell. The court concluded that it was clear from the evidentiary material that the plaintiff knew or should have known the floor was wet. In *Williams,* the hazard was created by the innkeeper. In *Buck v. Del City Apartments, Inc.,* 1967 OK 81, 431 P.2d 360, the hazard was ice and snow. The Supreme Court held:

> It is clear from the evidence that the wife knew or should have known of the general weather conditions. The dangers from them are universally known and were equally as apparent to her as they were to the motel keepers. There is no evidence here that the usual hazard from the icy condition was in any way increased by an act of the motel keepers. Where there is no act on the part of the owner or occupant of the premises creating a greater hazard than that brought about by natural causes, dangers created by the elements, such as the forming of ice and the falling of snow, are universally known, and all persons on the property are expected to assume the burden of protecting themselves from them. [Citations omitted.]

¶ 13 The evidentiary materials in the instant case establish 1) Hatcher knew it was raining, 2) Hatcher had shopped at the Store for several years and knew that the floor

2. Hatcher did not present these rulings as issues on appeal in her Petition In Error. Therefore, we do not address them.

could become slick when it got wet due to rain, 3) Hatcher was not watching where she walked at the time she fell, 4) Hatcher knew it had been raining for at least a few minutes when she got to the Store and that it was likely other customers had tracked in water, and 5) Hatcher testified that she would have seen water if she had been watching where she walked. Based on this undisputed evidence, it is clear that Hatcher knew or should have known that the floor was potentially wet or could become slippery from her wet shoes. These are hazards universally known by persons coming into a store from a parking lot wet with rain. Thus, Store had no duty to modify its premises or post warning signs under these facts. Absent a duty, there can be no negligence. *Copeland v. Lodge Enterprises, Inc.,* 2000 OK 36, 4 P.3d 695, 699; *Taylor v. Hesser,* 1998 OK CIV APP 151, 991 P.2d 35, 38.

¶ 14 In her argument opposing summary judgment, Hatcher couched the issue as whether the Store properly maintained its premises. Hatcher asserted that the Store failed to maintain its premises by failing to present evidence that it mopped the store regularly, by failing to have a dry mop at the front of the store at the time of Hatcher's fall, and by failing to place the carpeted mats directly adjacent to the thresholds of the doors. However,

> The duty to keep premises in a reasonably safe condition for the use of the invited public applies solely to defects or conditions which may be characterized as in the nature of hidden dangers, traps, snares, pitfalls, and the like—things that are not readily observable.

*Buck v. Del City Apartments, Inc.,* 431 P.2d at 365. Thus, once it is determined that the

hazard causing the fall in this case was known or knowable to Hatcher, the Store had no duty to modify its premises by adding mats or posting warnings. The fact that stores, in fact, place mats in front of doors or place Wet Floor signs on rainy days in an effort to prevent accidents, does not alter the duty established in cases like *Buck* and *Williams.*

¶ 15 Hatcher averred that the Store had actual and constructive notice, at the time Hatcher fell, of the dangerous condition because 1) the Store knew it was raining, and 2) the Store knew that the rain could cause the floor to become slick, based on the fact that the Store provided mats. However, Hatcher testified to her own knowledge of these two circumstances before she fell. Hatcher also testified that if she had been watching where she was walking, she would not have stepped into water (assuming prior customers tracked in water), and would not have fallen. Accordingly, the undisputed facts illustrate that the potential for a wet floor was an open and obvious condition at the time Hatcher fell.

¶ 16 Although Hatcher relies on cases in which store customers slipped and fell on sticky substances or other unexpected obstacles,[3] we find that the instant case is more similar to *Beatty v. Dixon,* 1965 OK 169, 408 P.2d 339. In *Beatty,* the plaintiff was visiting her parents' home, at their invitation, in order to take shelter from a storm in the parents' cellar. As the storm passed, various members of the extended family left the cellar, crossed the backyard in the rain, and entered the kitchen door. The plaintiff entered the house last and as she stepped into the kitchen, she slipped and fell. The court noted the plaintiff's testimony on cross-exam-

---

3. See *Ingram v. Wal-Mart Stores, Inc.,* 1997 OK 11, 932 P.2d 1128 (customer slipped on toothpicks, court found questions of fact re: whether store should have known of the dangerous condition and whether premises were properly maintained by being checked "often enough"); *White v. Wynn,* 1985 OK 89, 708 P.2d 1126 (customer slipped on sticky substance on floor of grocery store and Supreme Court found issue of fact remained: "whether store failed to exercise 'due diligence in watching for and/or cleaning up spillages which led to the condition which caused the accident' "); *Safeway Stores, Inc. v.*

*Keef,* 1966 OK 140, 416 P.2d 892 (customer slipped on banana peel and court held that evidence that store had not mopped the floor for over 8 hours before accident created fact question of whether the store exercised reasonable care—held that shopkeeper has duty to use ordinary care to keep aisles in a reasonably safe condition and warn customers of dangerous conditions which storekeeper reasonably should know about and which are unknown to customers). Cases involving owner-created hazards are not applicable to the facts of this case.

ination that she had used her parents' cellar as many as 20 times over the course of ten years and that she knew that the walkway was wet, her shoes were wet, and the threshold was wet at the time she fell. The court also noted the plaintiff's testimony that her family members who went in the house would have tracked water into the house, but that she did not stop to think about it.

¶ 17 The Supreme Court noted the rule as announced in C.J.S. that there is no duty to warn an invitee of any defect or danger which is well-known to the invitee or which is obvious, or which should have been observed by the invitee in the exercise of ordinary care. *Id.* at 343, citing 65 C.J.S. Negligence, § 50. The court concluded that because the plaintiff knew it was raining and knew the condition of the premises based on prior use, the wet floor of the kitchen was as known to the plaintiff as it was to her parents, so that the parents had no duty to warn and therefore were not negligent. *Id.* The court affirmed the trial court's decision sustaining the defendant parents' demurrer to the evidence.

¶ 18 The facts of the instant case are similar and it was undisputed by Hatcher that she had as much knowledge of the wet floor as the Store or could have discovered the condition in the exercise of reasonable care. We therefore find no duty on the part of the Store to warn or otherwise protect Hatcher from falling. Further, we find that it is not relevant whether the water on the floor of the Store was tracked in by Hatcher or other customers-Hatcher knew that when it was raining, the floor would likely be wet. Also irrelevant is the placement of the mats, although we note that photographic evidence submitted by Hatcher, purporting to show the placement of the mats at the time of Hatcher's fall, clearly shows that the mats were directly adjacent to the threshold of the Store. Hatcher's final alleged disputed fact is that the Store acquired additional "wet floor" signs after her fall which she argues demonstrated a failure to warn. We find the Store's subsequent measure of obtaining additional "wet floor" signs is irrelevant because the dangerous condition was open and obvious or should have been discovered in the exercise of reasonable care, and there was accordingly no duty to warn of the condition.

¶ 19 Having found no substantial controversy of material fact, and having found that the undisputed evidence shows that the Store is entitled to judgment as a matter of law, we AFFIRM.

HANSEN, C.J., and GARRETT, J., concur.